TYSON, Judge.
Norma Frances, alias Norma F. Francis, together with one Sylvester Russell was indicted for the possession of marijuana, contrary to law. The jury found the appellant “guilty of possession of marijuana for personal use” and the trial court set punishment at 12 months’ imprisonment in the county jail.
Dothan Police Sergeant Bob Sorrells testified that on January 7, 1981, accompanied by his partner, he went to a residence located at 205 A North Bell Street in the City of Dothan, Alabama, and knocked on the door. He stated that he carried a search warrant and that the parties named in the search warrant were Sylvester Russell and the defendant, Norma Francis, who is also known as “Candy”. He stated he knocked two or three times before Norma Francis came to the door, that he identified himself as a police officer and held up his badge for her to see and advised that he had a search warrant with which to make immediate search of the residence. Sorrells indicated that Norma Francis “slammed the door” in his face, ran back into the house and that he could hear a woman’s voice saying, “Throw it in the fire, throw it in the fire.” He stated that he demanded immediate en *470 try and when no one answered, together with Sergeant Wallace Williams, they forced the door open and inside found 19 clear plastic bags on the mantel over the fireplace. He stated that these were behind the picture of a black child which was on the mantel.
Sorrells also stated that they found a red cigarette pack containing one partially smoked cigarette. He stated that the only persons within the house were a white male, a two year old baby and the appellant, Norma Francis. The two officers then read the appellant a Miranda warning from a card and after ascertaining that she understood these constitutional rights and without any threats, intimidation, coercion or inducement they asked the appellant about the marijuana.
Norma Francis told the two officers that she was baby sitting at this residence for one Diane Gulledge and that when asked about selling marijuana she stated that she “had not sold but one nickel bag” and that with reference the cigarette package, she stated it “was hers.”
The evidence was seized by the two officers and was turned over to Dothan Police Officer John White, who then delivered the 19 clear plastic bags and cigarette package to Joe Saloom at the Enterprise, Alabama, Crime Lab.
Saloom tested the material and determined that same was in fact marijuana and was 131.77 grams and could be rolled into several hundred cigarettes.
Dothan Police Sergeant Wallace Williams confirmed the events previously testified to by his partner, Sergeant Sorrells, and the seizure of marijuana.
The appellant made a motion to exclude the state’s evidence as failing to prove a prima facie case, which was overruled.
Diane Gulledge testified that she was living at 205 A North Bell in the City of Dothan, Alabama, on the night of January 7, 1981. She stated that she was working at the Extendicare Health Center and stated that the appellant, Norma Francis, was not living there but had been staying there a few days because Diane Gulledge’s “baby was sick.” She stated that Norma Francis was living with her mother at that time and that Sylvester Russell did live at the house “every now and then.”
Diane Gulledge indicated that there was a big picture of her baby sitting on the mantel, about 11 X 14 in size, and that there was no marijuana in the house on the date of the arrest of Norma Francis on January 7, 1981.
On cross-examination, Diane Gulledge admitted that the appellant had been living at the residence in question for the “48 hour period, continuously” prior to the date of the arrest and seizure but she was only there as a “baby sitter.” She admitted that Sylvester Russell was her boy friend and would stay there with her “from time to time.”
Diane Favors testified that she was a neighbor who lived at 203 D North Bell right behind the home where the officers found the marijuana on January 7, 1981. She stated that there had been a raid on “Diane Gulledge’s house”, but that Norma Francis was merely baby sitting and that there was a man named Sydney Buchanan who was there that morning, together with Norma Francis and Diane Gulledge’s baby daughter. She stated that she had been over to the house in question but saw no plastic bags of green vegetable material or anything else on top of the mantel on that date. She insisted that Norma Francis did not live at the residence in question.
Sydney Buchanan testified that he had dropped by the residence of Diane Gulledge on the morning of January 7,1981, and that Norma Francis was there with the two year old baby of Diane Gulledge and a man named Mike. He stated that while he was there he saw the appellant hand a pack of Kool cigarettes to one Frank James, but that he did not notice any plastic bags on the mantel or any marijuana during the time he was at the residence.
Ethyl Pierce testified that she too was a neighbor and knew that for two nights and three days just prior to January 7, 1981, *471 Norma Francis had been baby sitting at Diane Gulledge’s apartment on North Bell. She stated that she had seen the picture of the baby over the mantel, but had not seen any marijuana inside.
On cross-examination she stated that Norma Francis was her daughter and that she was simply baby sitting for Diane Gul-ledge.
Sylvester Russell testified that he had been staying at the residence of Diane Gul-ledge at 205 North Bell and had spent the night of January 6, 1981 at that residence. He stated that he had gotten some marijuana a day or two before and had put it in plastic bags and that he had subsequently pled guilty to possession of marijuana and was presently serving time in the Houston County Jail. He stated there was a big picture of Diane Gulledge’s little girl on the mantel over the fireplace and that he had placed the marijuana there himself.
On cross-examination Russell denied putting any marijuana in a red cigarette package.
Norma Francis took the stand and testified that she had been baby sitting for some two and one-half days at the residence of Diane Gulledge at 205 North Bell when officers came by on January 7, 1981. She stated that her friend Mike was staying there and that since he had not gotten up, that she answered the door and that someone said something about looking for a bag of reefers. She stated that she shut the door saying that she did not know anything about it and when he knocked again and showed her the badge she started to open the door and the officers pushed open the door and cursed. She denied making any statements about throwing any substance into the fire and denied that she knew the existence of any marijuana being there. She stated that officers did find some marijuana on the mantel behind the picture of Diane Gulledge’s little girl, “little Tiffiny”. She stated that she had put it up there because the little girl had tried to grab a bag while crawling about. She denied trying to sell any marijuana that day to Frank James or anyone else.
I
In Henderson v. State, 347 So.2d 540 (Ala.Cr.App.), cert. quashed, 347 So.2d 543 (Ala.1977), we found the following:
“The issue presented by this record is whether or not the State presented a prima facie case of possession of the prohibited substance.
[1] Knowledge of the presence of the prohibited substance may be established by circumstantial evidence, and guilt does not depend upon ownership. Parks v. State, 46 Ala.App. 722, 248 So.2d 761; Daniels v. State, 49 Ala.App. 654, 275 So.2d 169.
[2] The offense of possession of illegal drugs is susceptible of joint commission. Green v. State, 30 Ala.App. 94, 2 So.2d 324.
[3] Where, as here, the presence of the accused at the scene is established through both direct and circumstantial evidence, and the evidence of the accused’s knowledge of the presence of the prohibited substance is shown together with other incriminating evidence, then the issue of the appellant’s guilt should be submitted to the jury. Radke v. State, 292 Ala. 290, 293 So.2d 314; Fields v. State, Ala.Cr.App., 333 So.2d 861.”
(a) In the instant case, the testimony of the state’s witnesses and indeed the appellant’s own witnesses established that she had been staying at the residence in question for some two and one-half days.
(b) Both Dothan Officers testified that they knocked and advised the appellant that they had a search warrant for the residence and asked her to open the door and that she slammed the door in their faces. Each officer, Sorrells and Williams, stated that they overheard a woman’s voice say twice, “Throw it in the fire, throw it in the fire,” and thereafter upon entering the premises found there was only one woman inside and the only other occupants were a white male and a two year old baby. Both officers testified to finding the 19 clear plastic bags which contained the green *472 plant material on the mantel, at or behind the large picture of Diane Gulledge’s baby daughter.
Where, as here, the evidence as above set forth raises questions of fact for the jury and such evidence if believed was sufficient to sustain the conviction, the trial court did not err in overruling the appellant’s motion to exclude the state’s evidence and properly submitted this cause to the jury for their determination. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); McHellen v. State, 351 So.2d 689 (Ala.Cr.App.1977); and Green v. State, 384 So.2d 1215 (Ala.Cr.App. 1980).
II
The appellant asserts as error the overruling of his objection when Diane Gul-ledge was being examined on cross-examination with reference her testimony on direct in appellant’s behalf, to the effect that the appellant was “merely a baby sitter” and did not live at the residence on the date in question. On Record pages 41-42 we find the following:
“Q Okay. Now you said that you didn’t have any marijuana in the house?
“A No, Sir.
“Q Somebody else must have brought it in then? Is that correct?
“A Yes.
“Q It wasn’t yours?
“A Was not mine.
“Q All right. You don’t know how it got there?
“A No.
“Q Now, this picture that was on the mantel, is that a picture of a Black baby?
“A Well, my baby is mixed.
“MR. GRUENEWALD: We object and move to exclude that.
“THE COURT: That is what the evidence is. I overrule you.
“BY MR. MAXWELL:
“Q And, Sylvester Russell lives there sometime, also?
“A Not live there, but he was my boyfriend. You know, might spend the night.
“Q Did he have a room?
“A No. He would sleep with me when he was there.
“Q All right. When you left on this morning at 6:45, approximately, fifteen until 7:00, the Defendant was there and Sylvester Russell was there? Is that correct?
“A Yes.”
Appellant asserts such was an effort on the part of the state to inject bias and prejudice against the appellant and that such was intended to inject race into this case.
We do not agree with this contention of appellant. Diane Gulledge was merely being cross-examined as to her alibi testimony in behalf of appellant. Her reply to the state’s question was not in response to the question itself. Moreover, the location of the plastic bags of marijuana on the mantel was a controverted issue of fact, as several of the defendant’s witnesses had denied any marijuana being on the premises or located on the mantel or behind the picture of the child. We do not believe that where, as here, testimony with reference the location of the picture on the mantel, and that it was a photograph of the baby having come into evidence without objection, that such was not error to allow facts to be shown over objection, where such has already been proven without objection. Allen v. State, 390 So.2d 676, (Ala.Cr.App.) and authorities therein cited.
We have carefully examined this record and find no error therein. This judgment is due to be and is hereby affirmed.
AFFIRMED.
HARRIS, P. J., DeCARLO and BOWEN, JJ., concur.