Justice PARRISH,
dissenting:
T41 I cannot join the court in affirming Mr. Asheraft's conviction because the evidence is insufficient to establish that Mr. Ashcraft constructively possessed the drugs and paraphernalia found in Mr. Sorenson's truck. Under the court's reasoning, anyone who has the misfortune of occupying a vehi'cle in which illegal drugs are found is subject to conviction. That cannot be the law.
1 42 We "overturn a conviction for insufficient evidence when ... the evidence is insufficient to prove each element of the crime beyond a reasonable doubt." State v. Fox, 709 P.2d 316, 318 (Utah 1985). Although we review the evidence "in the light most favorable to the verdict," State v. Nielsen, 2014 UT 10, ¶ 30, 326 P.3d 645, we must overturn a conviction when "the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." State v. Holgate, 2000 UT 74, ¶ 18, 10 P.3d 346 (internal quotation marks omitted).
143 Because the evidence presented fails to establish a nexus between Mr. Ashcraft and the drugs and paraphernalia found in the green bag, I believe that a reasonable juror necessarily would have harbored some reasonable doubt as to Mr. Asheraft's guilt. Accordingly, I would reverse his conviction.
¶ 44 Mr. Asheraft was convicted of possessing a controlled substance with intent to distribute. See Utax Cope § 58-37-8(1)(a)@ii). The State prosecuted Mr. Ash-craft on a theory of constructive possession, which requires a "sufficient nexus between the accused and the drug [or paraphernalia] *674 to permit an inference that the accused had both the power and the intent to exercise dominion and control over the drug [or paraphernalia]." State v. Layman, 1999 UT 79, ¶ 13, 985 P.2d 911 (alterations in original) (internal quotation marks omitted). But mere proximity to the drugs or paraphernalia, without additional evidence of control and dominion, is insufficient to establish possession, especially when proximity is not exelu-sive. See Fox, 709 P.2d at 319.
€45 The truck in which the contraband was found belonged to Mr. Sorenson. Indeed, Sergeant Huggard initially believed he was following and pulling over Mr. Sorenson. Sgt. Huggard learned Mr. Ashcraft was the driver only after pulling him over. At that time, the truck was also occupied by Ms. Chavez, who was sitting in the passenger seat. While following the truck and pulling Mr. Ashcraft over, Sgt. Huggard neither saw anyone place an item in the truck's bed nor put their hands out of the truck's back window. And it is inherently improbable that Mr. Ashcraft could have put his right-hand through the cab window to hide an item on the far-left side of the truck bed while maintaining control of the vehicle and avoiding detection by Sgt. Huggard.
46 During the initial search of the truck, Sgt. Huggard did not find any drugs or paraphernalia. Later, when the green bag was found, the contraband was tucked so far out of sight and was so inaccessible that a K-9 officer and dog did not detect it. The green bag contained a pink stun gun. Although Ms. Chavez had easier access to the green bag than Mr. Ashcraft, she was allowed to leave. Finally, despite the fact that three people had access to the green bag, the police did not conduct any forensic testing of the physical evidence. These facts raise serious questions as to whether Mr. Asheraft had any knowledge of the green bag's existence, and even more serious questions about whether he exercised dominion and control of it.
T 47 The majority acknowledges that there is no evidence directly linking Mr. Ashcraft to the illicit drugs. It instead relies on three inferences to create the necessary nexus. These are Mr. Ashcraft's presence in an area known for drug activity while carrying a large amount of cash, Mr. Ashecraft's allegedly incriminating statement to the police, and Mr. Ashceraft's possession of a knife with a brown substance on it. But if these inferences are sufficient to support a conviction based on constructive possession, there is no practical limit to the concept of constructive possession when applied to someone in nonexclusive proximity to illegal drugs or paraphernalia.
1148 Mr. Asheraft's late-night presence in an area known for drug activity with a large amount of cash creates no nexus between him and the items in the green bag. Instead, it raises only a speculative possibility of Mr. Asheraft's intent to distribute drugs. And Ms. Chavez was seen in the truck both nights, while Mr. Ashcraft may have been driving the truck on only the second night. In short, Mr. Ashcraft's late-night presence in a questionable neighborhood when the other possible possessors were also present cannot give rise to the inference that the drugs belonged to Mr. Ashcraft.
. The court construes Mr. Ashecraft's accusation that the arresting officer planted the green bag "immediately upon being asked about it" as an incriminating statement. Supro 121. But this statement is consistent with Mr. Asheraft's other statements disclaiming ownership of the bag and does not necessarily suggest a knowledge of its contents. Indeed, it is equally consistent with the possibility that the bag in fact belonged to Ms. Chavez or Mr. Sorenson and that Mr. Ashcraft intended to distance himself from it because he suspected its contents. Mr. Ashcraft's allegedly incriminating statement is much different from the statements on which we have relied in other cases where incriminating behavior or statements gave rise to an inference of constructive possession. Fox, 709 P.2d at 319 (citing United States v. Garcia, 655 F.2d 59, 62 (5th Cir.1981) (noting that defendant nodded affirmatively when introduced as owner of cocaine); Francis v. State, 410 So.2d 469, 471 (Ala.Crim.App.1982) (noting that the defendant slammed a door in the face of police and yelled, "throw it in the fire"); Allen v. State, 158 Ga.App. 691, 282 S.E.2d 126, 127 (1981) *675 (noting that the defendant told an unnamed individual that the defendant had $500 worth of marijuana)).
€{50 The brown substance on Mr. Ash-craft's knife is similarly insufficient to link him to the green bag. Even if the substance were an opiate-derivative, it is mere speculation to assume that the contraband found in the green bag belonged to Mr. Ashcraft simply because he had a knife that contained a suspect residue. And such speculation is insufficient to overcome reasonable doubt as to the ownership of the green bag. In my view, no nexus between the knife and green bag could be drawn absent some evidence that the substance on the knife was the same as the illicit substance in the green bag. But the State presented no such evidence. While the State may have charged Mr. Ashcraft with possession of drug paraphernalia based on the substance on the knife, the knife itself is not evidence that Mr. Ashcraft committed the separate crime of possessing the green bag. Without some evidence linking Mr. Ashcraft to the drugs, it is a fallacy to infer that he possessed and intended to distribute drugs just because he was driving a borrowed truck in a questionable neighborhood late at night, carrying cash.
1 51 Mr. Ashcraft shared possession of the vehicle with two other individuals. Accordingly, in order to support a verdict of guilt, the inferences relied on by the State must either exclude the other individuals as possible possessors or point to Mr. Ashcraft as the possessor of the contraband. See Fox, 709 P.2d at 820 ("[Elvidence supporting the theory of 'constructive possession' must raise a reasonable inference that the defendant was engaged in a criminal enterprise and not simply a bystander."); State v. Salas, 820 P.2d 1386, 1388 (Utah Ct.App.1991) ("In order to find that the accused was in possession of drugs found in an automobile he was not the sole occupant of, and did not have sole access to, there must be other evidence to buttress such an inference."). Without evidence creating a nexus between Mr. Ashcraft and the drugs, or excluding the other two possible possessors, Mr. Ashcraft may be serving a sentence for the criminal activity of others.
€ 52 I acknowledge that the evidence presented at trial may have been sufficient to sustain a conviction if Mr. Asheraft had ex-elusive possession of the vehicle. But he did not. The vehicle was actually owned by and registered to Mr. Sorenson, a suspected drug dealer. And the State did not dispute that Mr. Ashcraft had borrowed the truck when Mr. Sorenson was hospitalized. While the contraband was theoretically within reach of Mr. Ashcraft, the officer did not see him reach into the back of the truck. More importantly, the contraband was also in reach of Ms. Chavez, but the police did not bother to question or search her. See Salas, 820 P.2d at 1888 (acknowledging that drugs found where a passenger had been sitting "renders the remaining evidence sufficiently inconclusive as to whether defendant knew of the presence of the cocaine"). In short, the evidence does not link Mr. Ashcraft with the contents of the green bag, nor does it exclude Mr. Sorenson or Ms. Chavez as the owner. In my view, the inferences on which the majority relies are simply insufficient to establish beyond a reasonable doubt that Mr. Ashcraft exercised dominion and control over the green bag.
1 53 The State's failure to offer any direct evidence linking Mr. Ashcraft to the green bag also speaks volumes. Although I agree with the court that we must not "imagin{e] the evidence that might have been presented," supra ¶ 28 (emphasis omitted), it is nonetheless helpful to identify the lacking evidence that may have supported a finding of constructive possession. Here, the State did not present any evidence "linking or tending to link" Mr. Ashcraft with the drugs, including, "sale of drugs, use of drugs, ... drugs in plain view, and drugs on defendant's person." Salas, 820 P.2d at 1388. His personal items were not intermingled with the items found in the green bag. See State v. Workman, 2005 UT 66, ¶ 34, 122 P.3d 639. And the State presented "no forensic evidence tying" Mr. Ashcraft to the green bag, such as fingerprints or drug-testing of the knife and heroin inside the green bag. See State v. Gonzales-Camargo, 2012 UT App 366, ¶ 24, 293 P.3d 1121. Finally, the State *676 made no attempt to determine whether Ms. Chavez was the owner of the green bag.
54 In my view, this case rests exclusively on Mr. Ashceraft's proximity to drugs; the inferences on which the State relies are insufficient to give rise to the inference that Mr. Ashcraft constructively possessed the green bag. Accordingly, I would reverse his conviction.