2008 UT App 433

**STATE of Utah, in the interest of M.B., a person under eighteen years of age.**

**M.B., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20070671–CA.**

Court of Appeals of Utah.

Nov. 28, 2008.

Kristine M. Rogers, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Ryan D. Tenney, asst. atty. gen., Salt Lake City, for Appellee.

Before GREENWOOD, P.J., McHUGH and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 The main issue in this appeal is whether a minor can be an accomplice to vehicular burglary and theft when he or she just sits in the front passenger seat of a parked vehicle, without any overt or affirmative action taken to aid in the crime, while two adult companions burglarize a vehicle. We conclude that no definitive inferences regarding such a passenger's involvement in the crime can be drawn without resort to impermissible conjecture or speculation and that a fact-finder could therefore not conclude, beyond a reasonable doubt, that such a person was an accomplice. We accordingly reverse M.B.'s convictions.

## BACKGROUND

¶ 2 At around 2:00 a.m. on the morning of April 13, 2007, two men broke into a truck owned by a Salt Lake City couple, damaging the truck and taking its stereo and some CDs. At about the same time, the wife awoke to the sound of a dog barking and a car door shutting. She looked out her window and first observed an unfamiliar car parked on the street across from her driveway. She then saw one man crawling out the back of her truck's camper shell and a second man exiting the driver's side door carrying the stereo and CDs. When the two men returned to the unfamiliar car and opened a door, the dome light came on and she observed the silhouette of M.B. "[j]ust sitting" in the passenger seat. Her husband, who had called the police shortly after she saw the first man exit the camper shell, gave the police information about the vehicle and the direction it was headed. A short time later, police

stopped the vehicle and arrested its occupants.

¶ 3 The responding officer stated that M.B. and the two men were wearing dark clothing. Upon investigation of the vehicle, the officer found a screwdriver between the console and the front passenger seat, and some gloves in the console. In the trunk, he found two additional screwdrivers and three more pairs of gloves, along with a car stereo that still had some of the couple's truck's dashboard connected to it.

¶ 4 The State brought the following delinquency allegations against M.B. in juvenile court: (1) vehicular burglary, see Utah Code Ann. § 76–6–204(1) (2003); (2) theft, see id. § 76–6–404; (3) unlawful possession of burglary tools, see id. § 76–6–205; and (4) theft by receiving stolen property, see id. § 76–6–408(1) (Supp.2008). After trial, the juvenile court determined that M.B. was guilty of vehicular burglary, theft, and unlawful possession of burglary tools.[1] This appeal followed.

## ISSUE AND STANDARD OF REVIEW

▉▉▉ ¶ 5 M.B. argues that there was insufficient evidence to prove beyond a reasonable doubt that he was guilty of vehicular burglary, theft, or possession of burglary tools. "When reviewing a juvenile court's decision for sufficiency of the evidence, we must consider all the facts, and all reasonable inferences which may be drawn therefrom, in a light most favorable to the juvenile court's determination[.]" In re V.T., 2000 UT App 189, ¶ 8, 5 P.3d 1234. We will reverse only if the ruling "is 'against the clear weight of the evidence, or if [we] otherwise reach[ ] a definite and firm conviction that a mistake has been made.'" Id. (quoting State v. Walker, 743 P.2d 191, 193 (Utah 1987)). See In re R.L.I., 771 P.2d 1068, 1070 (Utah 1989).

## ANALYSIS

### I. Vehicular Burglary and Theft

¶ 6 M.B. claims that his mere passive presence in the front passenger seat of the parked vehicle did not provide enough evidence to support a conclusion that he was an accomplice to vehicular burglary or theft. Specifically, he argues that no evidence admitted in this case could be construed as proving, beyond a reasonable doubt, that "[he] engaged in some active behavior, or at least speech or expression, that served to assist or encourage another to unlawfully enter the vehicle" and take the items in question. We agree.

¶ 7 "Any person who unlawfully enters any vehicle with intent to commit a felony or theft is guilty of a burglary of a vehicle." Utah Code Ann. § 76–6–204 (2003). "A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." Id. § 76–6–404. "Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct." Id. § 76–2–202. We only address whether M.B. "encourage[d]" or "intentionally aid[ed]" his two adult companions, as the facts clearly do not support a conclusion that M.B. "directly commit[ted] the offense, ... [or] solicit[ed], request[ed], [or] command[ed]" that the others commit vehicular burglary or theft. Id.

▉▉▉ ¶ 8 Our precedents clearly show that "[m]ere presence, or even prior knowledge, does not make one an accomplice to a crime absent evidence showing—beyond a reasonable doubt—that [a] defendant advised, instigated, encouraged, or assisted in perpet[r]ation of the crime." In re V.T., 2000 UT App 189, ¶ 11, 5 P.3d 1234 (quoting State v. Labrum, 959 P.2d 120, 123 (Utah Ct.App.1998)) (internal quotation marks omitted). However, "[w]hile mere presence at the scene of a crime affords no basis for a

---

**1.** We note that no written findings of fact were entered in this case. At the end of the trial, the juvenile court discussed its legal conclusions regarding the allegations and indicated what testimony it found supported those allegations. It requested that the State prepare written findings of fact and conclusions of law that would support applying enhancements to the vehicular burglary and theft allegations, but none were ever entered.

conviction, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." *American Fork City v. Rothe*, 2000 UT App 277, ¶ 7, 12 P.3d 108 (citation and internal quotation marks omitted) (alteration in original).

¶ 9 *In re V.T.*, 2000 UT App 189, 5 P.3d 1234, is the Utah case most directly on point. There, this court concluded that a juvenile defendant's presence during and after a theft did not support a conclusion that he was an accomplice because no evidence suggested his active involvement. *See id.* ¶ 20. The evidence showed that the defendant had been with friends when they stole a camcorder and that he remained in their presence following the theft while his friends discussed the crime. *See id.* ¶¶ 2–5. The State argued that this evidence, coupled with the defendant's friendship with the thieves, supported an inference that the defendant encouraged the theft and was, therefore, guilty of the crime as an accomplice. *See id.* ¶ 10. The juvenile court agreed. *See id.* ¶ 7. We overturned the juvenile court's ruling, concluding that "[t]he facts ... prove[d] only that [the defendant] was present before, during, and after the theft of the camcorder" and that "[t]he lack of any evidence showing that he at least encouraged the other defendants in stealing the camcorder preclude[d]" a determination that he was culpable as an accomplice. *Id.* ¶ 20.

¶ 10 Other Utah cases show that a defendant's conviction based on accomplice liability will be upheld when the evidence and circumstances show some active participation or involvement in the underlying crime. In *State v. Johnson*, 6 Utah 2d 29, 305 P.2d 488 (1956), for example, the evidence showed that the defendant was spotted "walking rapidly away from the" scene of the burglary, *id.* at 488, and that another man involved could only have gained access to the burglarized building via a ladder, which the police soon discovered, hidden by cardboard. *See id.* at 489. The Utah Supreme Court observed that the totality of the evidence supported an inference that the defendant had aided the burglary because the other man,

who was apprehended inside the building, could not have hidden the ladder after he climbed it and entered the building. *See id.* Accordingly, the totality of the circumstances allowed an inference beyond a reasonable doubt that the defendant had actively aided the other man and was therefore an accomplice. *See id.* Also, in *American Fork City v. Rothe*, 2000 UT App 277, 12 P.3d 108, this court upheld the conviction of the defendant based on accomplice liability when there was evidence that, beyond his being present during the commission of the crime, the defendant actively looked up and down two separate store aisles, apparently acting as a lookout, while a companion stole items off the shelves of a grocery store. *See id.* ¶¶ 2, 9–10.

■ ¶ 11 The State presented no evidence in the instant case suggesting M.B. actually behaved as a lookout or otherwise aided or encouraged the crimes of vehicular burglary and theft. For example, no evidence showed that M.B. looked up and down the street, was in the driver's seat poised to whisk his companions away, handled any of the stolen property, or otherwise acted to ensure that his companions were not discovered or apprehended while they committed vehicular burglary and theft. The only evidence pertaining to M.B. was that he was wearing dark clothes and sat in the passenger seat of the vehicle while his two adult companions broke into the couple's truck, removed CDs and a stereo, and returned to the getaway car, placing the stolen items in the trunk. Without any evidence showing more than just a passive presence, we conclude that the juvenile court's determination that M.B. was guilty of vehicular burglary and theft was erroneous as a matter of law.

¶ 12 The State, relying heavily on federal case law, urges that M.B.'s dark clothing and presence in the idling getaway car[2] allows a fact-finder to draw an inference that he was a lookout ready to give a warning if needed or to otherwise aid the men in their efforts to commit the crimes without being apprehended. The juvenile court also seems to

2. One of the victims testified that she "believe[d the car] was running."

have found[3] that M.B.'s dark clothing, along with his presence in the getaway car, allowed an inference, beyond a reasonable doubt, that M.B. was involved in the crime. We disagree that M.B.'s dark attire solidifies any inference that could be drawn regarding his passive presence in the vehicle at the scene of the crime. We emphasize that there are both innocent and incriminating reasons to explain M.B.'s attire. Considered in a light most favorable to the juvenile court's conclusion, any inferences that may be drawn from M.B.'s dark clothing, along with his passive presence in the passenger seat, are still too weak and speculative to support a conclusion beyond a reasonable doubt that M.B. was an accomplice to vehicular burglary or theft. We also disagree that an idling getaway car, when coupled with the other factors, supports an inference beyond a reasonable doubt that M.B. was an accomplice, given that he was not in the driver's seat.[4]

¶ 13 Moreover, we note that the federal cases relied on by the State mirror Utah's case law in providing that, rather than mere presence, presence plus other factors in the totality of the circumstances may support an inference of involvement in any given case. For example, the First Circuit in *United States v. Ortiz*, 966 F.2d 707 (1st Cir.1992), *cert. denied*, 506 U.S. 1063, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993), stated:

> On the one hand, "[m]ere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt; nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting." On the other hand, "there are circumstances where presence itself implies participation—as where a 250-pound bruiser stands silently by during an extortion attempt, or a companion stands by during a robbery, ready to sound a warning or give other aid if required."

*Id.* at 712 (citations omitted) (alteration in original). *See United States v. Cruz–Valdez*, 773 F.2d 1541, 1545 (11th Cir.1985) ("The totality of the evidence in true 'mere presence' cases is much less substantial than the evidence ... now before the court. Occasionally, ... the prosecution through either oversight or lack of its availability produces no evidence against a given defendant except that he was present when contraband was discovered. In most cases ... however, the evidence establishes not mere presence but presence under a particular set of circumstances.... [Such cases] require[ ] ... examination of all of the proved circumstances ... to determine whether from them a reasonable jury could infer and find beyond a reasonable doubt knowing and intentional participation."), *cert. denied sub nom. Ariza–Fuentas v. United States*, 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986). *Cf. Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) ("[A] person's mere propinquity to others independently suspect-

---

3. As previously indicated, no written or oral factual findings were entered, and the juvenile court simply remarked on what evidence it considered in making its decision following the presentation of evidence.

4. In a similar vein, the State, at oral argument, asserted that prudent thieves would not dare to leave a car running while they committed their crime unless an accomplice was inside, lest their car be stolen even as they were committing their own crime. Therefore, according to the State, M.B.'s mere presence in the getaway car—as a kind of hedge against the theft of their automobile—aided the men in their efforts to efficiently burglarize the vehicle without the distraction of having to keep an eye on their own car. The argument suggests that because vehicular burglars and thieves are particularly savvy about street crime, they would recognize the possibility that someone else might happen along and steal an empty but running car while they were in the

process of committing their crime. We note that the likelihood that a random car thief would have fortuitously stumbled across the vehicular burglars' unattended running car in that particular residential cul de sac in the wee hours of the morning is speculative at best. The Eleventh Circuit in *United States v. Cruz–Valdez*, 773 F.2d 1541 (11th Cir.1985), *cert. denied sub nom. Ariza–Fuentas v. United States*, 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986), mentions that "prudent smuggler[s]" would likely take certain precautions while executing their crime. *Id.* at 1547. This crime and these criminals, however, are not on the same level as those "prudent smuggler[s]" mentioned in the *Cruz–Valdez* opinion. Here we are dealing with run-of-the-mill thieves and about $300 worth of stolen property in a residential area, while *Cruz–Valdez* dealt with more sophisticated criminals and millions of dollars of marijuana on a dangerous ocean voyage. *See id.* at 1543, 1546–47.

ed of criminal activity does not, without more, give rise to probable cause to search that person.").

¶ 14 Furthermore, the federal cases discussed by the State support our conclusion that M.B.'s passive presence was not enough to create an inference that he was encouraging or aiding the adult men because stronger evidence was presented against the defendants in the federal cases. *See United States v. White*, No. 95–1854, 1996 WL 528957, at *2–3, 1996 U.S.App. LEXIS 25310, at *7–8 (6th Cir. Sept. 17, 1996) (concluding that acting as a bodyguard and driver for a drug dealer amounted to active participation and stating, "[w]hile guilty knowledge and the presence at the scene of a crime alone may not be sufficient, the evidence in this case shows some active participation and a willingness on the part of [Defendant] to assist ... in this drug deal"); *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir.1993) (determining that extensive precautions taken to ensure security in an apartment during a mob meeting and the content of the information discussed during that meeting were circumstances under which the jury could infer a mob underboss's involvement in the crimes discussed even though he did not participate in the conversations), *cert. denied sub nom. Gotti v. United States*, 511 U.S. 1070, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *Ortiz*, 966 F.2d at 711–14 (determining that the defendant was guilty as an accomplice when he was present in a car at the time a drug transaction was completed, even though he did not actively participate in the drug deal, when the court inferred from the evidence that he was brought to the *final* transaction purposefully; the drugs were in a bag in plain view on the seat between the defendant and the driver; the defendant and a third man involved were brothers-in-law; and the defendant had a beeper); *Cruz–Valdez*, 773 F.2d at 1546–47 (concluding that the totality of the evidence allowed an inference that the defendant was involved in a drug smuggling operation based on his presence aboard a ship containing "thousands of pounds of marijuana, worth millions of dollars," when it was a flagless shrimp trawler, with no operative equipment for shrimping, that had "a single cabin and an unlatched hold" containing the marijuana, and when "a prudent smuggler is not likely to suffer the presence of unaffiliated bystanders" given the "deadly hazards implicit in narcotics trafficking" and "risks of robbery or 'rip-offs' ").[5]

¶ 15 The State additionally argues that, as in *Ortiz*, M.B.'s presence suggests involvement because M.B. was related to the owner and driver of the getaway car.[6] However, *Ortiz* is distinguishable because this case involves an adult and a minor. Under the circumstances we do not think the familial relationship, coupled with the difference in age, necessarily supports involvement by M.B., who might have tagged along not

**5.** The State further relies on federal cases that involve defendants who were arrested based on their presence in vehicles that contained drugs. *See Maryland v. Pringle*, 540 U.S. 366, 368–70, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003); *United States v. Montgomery*, 377 F.3d 582, 585–86, 588–89 (6th Cir.2004), *cert. denied*, 543 U.S. 1167, 125 S.Ct. 1347, 161 L.Ed.2d 143 (2005). We note, however, that these cases involved attempts to suppress evidence obtained as a result of allegedly illegal arrests where the issue was whether the officers had *probable cause* to arrest or search the defendants. *See Pringle*, 540 U.S. at 369–70, 124 S.Ct. 795; *Montgomery*, 377 F.3d at 585–90. The probable cause required to arrest or search a defendant does not require the same strength of evidence that is necessary to conclude a defendant is guilty of a crime beyond a reasonable doubt. *Cf. State v. Virgin*, 2006 UT 29, ¶ 20, 137 P.3d 787 ("Under the probable cause standard, the prosecution has the burden of producing 'believable evidence of all the elements of the crime charged,' but this evidence does not need to be 'capable of supporting a finding of guilt beyond a reasonable doubt.' ") (citation omitted); *State v. Clark*, 2001 UT 9, ¶ 11, 20 P.3d 300 ("We have ... held that the probable cause standard is ... 'less than would prove the defendant guilty beyond a reasonable doubt.' Indeed, we recently stated, '[The probable cause] standard is lower, even, than a preponderance of the evidence standard applicable to civil cases.' ") (citations omitted) (third alteration in original). Accordingly, the line of authority relied on by the State does not require a different conclusion in this case. Indeed, it can be noted that M.B., perhaps mindful of the different standards, did not bother to challenge the legality of his arrest.

**6.** The record suggests that the driver of the getaway car was M.B.'s brother, but M.B.'s counsel at oral argument suggested they were actually cousins. Both counsel did, however, agree that the two were closely related.

knowing criminal activity was afoot or, even knowing it was, planned (or was directed) not to participate. We further note that in this case, the stolen property was placed in the trunk of the vehicle, and any gloves or tools were not in open and plain view of M.B. but in the trunk, console, or between the console and seat. In contrast, we think Ortiz's purposeful presence at the final sale during the drug transaction, with the drugs in plain view on the seat next to him, were the crucial facts supporting an inference of involvement and that the fact regarding Ortiz's relationship with another man who was involved—recited in the *Ortiz* opinion and relied on by the State in the instant case—merely provided further support under the circumstances. *See Ortiz*, 966 F.2d at 713–14 (discussing evidence against Ortiz and stating that "[w]hile innocent association with those involved in illegal activities can never form the sole basis for a conviction, the existence of a close relationship between a defendant and others involved in criminal activity can, *as a part of a larger package of proof,* assist in supporting an inference of involvement in illicit activity") (citations omitted) (emphasis added).

¶ 16 The State further urges that the nature of the crime, i.e., a felony, supports a conclusion that M.B.'s presence was culpable rather than innocent because felons do not want innocent bystanders present while they commit a felony given that such persons might later present incriminating evidence against them. *See United States v. Baker,* 98 F.3d 330, 339 (8th Cir.1996), *cert. denied,* 520 U.S. 1179, 117 S.Ct. 1456, 137 L.Ed.2d 561 (1997); *Ortiz,* 966 F.2d at 712. *See also Maryland v. Pringle,* 540 U.S. 366, 373, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (remarking that "a car passenger . . . will often be engaged in a common enterprise with the driver") (citation and internal quotation marks omitted). We conclude, however, as previously discussed, that the familial relationship in this case between a minor and an adult creates other explanations for M.B.'s presence besides that of complicit involvement in the criminal activity, e.g., M.B. may have been left with no choice but to accompany his adult relative to the scene of the crime. Moreover, because M.B. was family, his adult relative likely was less concerned that M.B. would "rat him out" given the realities of family loyalty.[7]

¶ 17 We additionally acknowledge that *drivers* of getaway cars are typically found guilty under accomplice liability theories because, as a driver, they inherently show active involvement in the crime. *See, e.g., State v. Smith,* 706 P.2d 1052, 1056 (Utah 1985) (holding defendant guilty of felony theft when evidence showed he was the driver of the getaway car and other additional evidence supported his involvement in the crime); *State v. Murphy,* 26 Utah 2d 330, 489 P.2d 430, 431–32 (1971) (determining that the defendant was guilty of first degree murder committed during a robbery when the defendant drove one getaway car to the location of a second getaway car). No cases, however, have been called to our attention where a person just sitting as a passenger in a getaway car was found guilty as an accomplice. Accordingly, and for all the reasons discussed, we reverse M.B.'s vehicular burglary and theft convictions.

## II. Possession of Burglary Tools

¶ 18 The State argues that M.B. was at least guilty of possession of burglary tools because he constructively possessed gloves located within the console of the car and a screwdriver lodged between the console and the front passenger seat.[8] We first address whether the Legislature intended the term "possesses" in Utah Code section 76–6–205 to encompass both constructive and actual

---

7. Depending on the nature of the familial relationship, a less benign scenario is surely possible. Conventional wisdom suggests, for example, that the older relative may have simply been able to state, "Keep quiet about this or you're gonna get smacked," to secure his younger relative's silence.

8. M.B. briefly contests whether the screwdrivers and gloves were actually burglary tools. As we conclude that the State failed to prove M.B. had constructive possession of the gloves and screwdriver, we do not specifically address whether the gloves and screwdriver were burglary tools. We note, however, that a police officer testified that screwdrivers and gloves are commonly used to commit vehicular burglary.

physical possession, and then we address whether M.B. constructively possessed the items in question.

## A. Interpretation of the Term "Possesses" in Section 76–6–205

¶ 19 "Our primary goal in interpreting ... statutes is to [elucidate] the true intent and purpose of the Legislature. We do so by first looking to the statute's plain language, and giv[ing] effect to the plain language unless the language is ambiguous." *Li v. Enterprise Rent–A–Car Co.*, 2006 UT 80, ¶ 9, 150 P.3d 471 (footnotes and internal quotation marks omitted) (third alteration in original). Utah Code section 76–6–205 states:

> Any person who manufactures or possesses any instrument, tool, device, article, or other thing adapted, designed, or commonly used in advancing or facilitating the commission of any offense under circumstances manifesting an intent to use or knowledge that some person intends to use the same in the commission of a burglary or theft is guilty of a class B misdemeanor.

Utah Code Ann. § 76–6–205 (2003). "Possess" is defined as "to own, possess," "to take possession of," or "to make ... the owner or holder." *Webster's Third New International Dictionary* 1770 (1993). "Possession" is defined as "the act or condition of having in or taking into one's control or holding at one's disposal" and as "something owned, occupied, or controlled." *Id.* Constructive possession occurs when "there [i]s a sufficient nexus between the defendant and the [item] to permit a factual inference that the defendant had the power and the intent to exercise control over the [item]." *State v. Layman,* 1999 UT 79, ¶ 15, 985 P.2d 911. Because the plain meaning of "possesses" and "possession" are unambiguous, and because the legal definition of constructive possession—requiring one to have power and intent to exercise control over an item—is encompassed by the plain meaning of the term "possession," we conclude that the Legislature contemplated the term "possesses" to mean both constructive and actual possession. *See Cox Rock Prods. v. Walker Pipeline Constr.,* 754 P.2d 672, 676 (Utah Ct.App.1988) ("Since the language is clear, ... it is not appropriate to look to legislative history. 'There is nothing to construe where there is no ambiguity in the statute.'") (citations omitted).

## B. Whether M.B. Constructively Possessed Burglary Tools

¶ 20 The State argues that the juvenile court properly inferred that M.B. constructively possessed the burglary tools because he could have placed the screwdriver and gloves in the console or between the seat, he acquiesced to their presence in the vehicle, he never argued that he was present by duress, and he could have moved the screwdriver and gloves. These arguments are unavailing.

¶ 21 As previously indicated, constructive possession occurs when "there [i]s a sufficient nexus between the defendant and the [item] to permit a factual inference that the defendant had the power and the intent to exercise control over the [item]." *Layman,* 1999 UT 79, ¶ 15, 985 P.2d 911. "Stated differently, to show constructive possession, the State must prove beyond a reasonable doubt that the [item] w[as] subject to the defendant's dominion and control and the defendant had the intent to exercise that control." *Id.* ¶ 16. "Knowledge and ability to possess do not equal possession where there is no evidence of intent to make use of that knowledge and ability." *State v. Fox,* 709 P.2d 316, 319 (Utah 1985). "Whether a sufficient nexus between the accused and the [item] exists depends upon the facts and circumstances of each case." *Id. See Layman,* 1999 UT 79, ¶ 14, 985 P.2d 911 (discussing that "the existence of a sufficient nexus to prove constructive possession is a highly fact-sensitive determination," and that "factors particularly relevant [in one] specific factual context" "are not universally pertinent factors [or] legal elements of constructive possession in any [given] context").

¶ 22 "[T]he mere presence of the defendant in an automobile in which [incriminating items] are found does not, without more, constitute sufficient proof of his possession of such [items.]" *State v. Salas,* 820 P.2d 1386, 1388 (Utah Ct.App.1991) (citation and internal quotation marks omitted). "In order to find that the accused was in possession of [the incriminating item] found in an

automobile he was not the sole occupant of, and did not have sole access to, there must be other evidence to buttress such an inference." *Id.*

¶ 23 In *State v. Salas*, 820 P.2d 1386 (Utah Ct.App.1991), a case addressing whether a defendant had constructive possession of drugs found in a crack in the backseat cushion of an automobile, *see id.* at 1387–88, this court listed factors that "link[ed] or tend[ed] to link" a defendant to drugs, "includ[ing] incriminating statements, suspicious or incriminating behavior, sale of drugs, use of drugs, proximity of defendant to location of drugs, drugs in plain view, and drugs on defendant's person." *Id.* at 1388. The court in *Salas* concluded that the evidence did not prove the defendant constructively possessed the drugs, even though he owned the vehicle, because others had access to the vehicle; the drugs were found in a location where it would be difficult for the defendant, as the driver, to reach them; and the defendant's spontaneous statements and actions indicated he had not previously known about the drugs while the actions of a passenger were more suspicious. *See id.* at 1389.

¶ 24 The case of *State v. Ferry*, 2007 UT App 128, 163 P.3d 647, is also instructive. In that case, this court discussed the merits of a constructive possession theory while evaluating whether the defendant's counsel rendered ineffective assistance. *See id.* ¶ 16 & n. 2. The court noted that without the defendant's incriminating statements that should have been suppressed, "aside from the syringe's proximity, there is little to no admissible evidence indicating that [the d]efendant intended to 'exercise dominion and control' over the syringe," *id.* at 16 n. 2 (citation omitted), and that the inadmissible statements were therefore "critical to the State's constructive possession theory," *id.*

¶ 25 In *State v. Fox*, 709 P.2d 316 (Utah 1985), a case examining whether the defendant constructively possessed drugs located on property the defendant owned, the Utah Supreme Court determined that the evidence did support a constructive possession theory. *See id.* at 319. The factors that the Court found relevant included ownership or occupancy of the place where the incriminating

item was found; incriminating statements or behavior of the defendant; presence of the incriminating item among the effects of the defendant; and presence of the incriminating item in a location under the control of the defendant, i.e., a drawer in a dresser owned by the defendant. *See id.* The Court concluded that the evidence showed the defendant constructively possessed the drugs when, even though he did not have exclusive control over the premises, he owned the premises; drugs, drug paraphernalia, and a book titled *Marijuana Grower's Guide* were found in a room containing his personal effects; and one greenhouse containing marijuana was attached to the house. *See id.* at 319–20. *See also State v. Lloyd*, 662 P.2d 28, 29 (Utah 1983) (per curiam) (concluding that the defendant possessed burglary tools when some tools were on his person and some were in a van, and when he broke into a run fleeing the scene of the crime).

 ¶ 26 The evidence presented against M.B. to support the State's constructive possession theory is considerably less substantial than the evidence against the defendant in *Fox*. The State's evidence only shows that M.B. was in a car that contained the gloves and screwdrivers, and that a screwdriver and some gloves were in his vicinity but not in plain sight. With regard to factors relevant in this case, the evidence does not show whether M.B. knew the items were present, whether he handled the items,[9] or whether he made a statement or acted in a certain way that evidenced an intent to exercise control over the items. And as established above, mere presence in a car with burglary tools—even if the defendant knew the tools were present and he could have accessed the tools—does not itself establish constructive possession because it does not establish a sufficient nexus between the defendant and the incriminating items. The State's arguments therefore are unavailing, and we accordingly conclude that without any evidence showing M.B. handled the items or evidence otherwise evincing M.B.'s intent to exercise control over the items, the evidence was insufficient to establish constructive possession of burglary tools. We therefore reverse the juvenile court's conclusion that M.B. was guilty of possession of burglary tools.

**9.** The State conceded at oral argument that no fingerprint evidence was introduced against M.B.

## CONCLUSION

¶ 27 We conclude that the State presented insufficient evidence to support a conclusion that M.B. committed vehicular burglary and theft, as the fact-finder could not, beyond a reasonable doubt, infer his involvement in the crime based on his mere passive presence in the passenger seat of the getaway car. We also conclude that there was insufficient evidence to support a conclusion that M.B. possessed burglary tools as no evidence supported an inference beyond a reasonable doubt that he either had control, or intended to exercise control, over the gloves and screwdrivers found in the getaway car.

¶ 28 Reversed.

¶ 29 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and CAROLYN B. McHUGH, Judge.