**2020 UT App 94**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF J.E.G.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

STATE OF UTAH,
Appellee,
*v.*
J.E.G.,
Appellant.

Opinion
No. 20190116
Filed June 11, 2020

Third District Juvenile Court, West Jordan Department
The Honorable Renee Jimenez
No. 1144745

Daniel R. Black, Attorney for Appellant

Sean D. Reyes and Nathan H. Jack,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and KATE APPLEBY
concurred.

ORME, Judge:

¶1     Appellant J.E.G. (JEG) challenges his adjudication as a delinquent on two counts of sexual abuse of a child under 14. He argues that the juvenile court erred in allowing the State to amend its petition after all the evidence was presented, thereby thwarting his alibi defense and violating the Double Jeopardy Clause, and in finding that the State met its burden to prove beyond a reasonable doubt that he committed the offenses. We disagree and affirm.

BACKGROUND[1]

¶2    Sometime in mid-August 2015, the victim (Victim), her two sisters, and her mother moved in with JEG's family. During some of the time Victim lived there, her mother and JEG's mother both worked during the day, which resulted in JEG accompanying Victim and her younger sister home from school, where they would remain without any adult supervision until their mothers returned from work. One day after arriving home, Victim was alone in the bedroom she shared with her mother and sisters watching television, when JEG entered and stuck his hand under Victim's underwear and touched her genitals for "a couple minutes." This type of abuse was not an isolated incident but occurred "more than once" when JEG and Victim were both quite young—JEG was 11 or 12 years old, and Victim was 8 years old.

¶3    Around seven months after the last incident of abuse, and after Victim and her family had moved out of JEG's home, Victim told her mother what had happened, but her mother did not immediately report it to law enforcement. It was not until nearly two years after the abuse occurred—and more than one year after Victim disclosed it to her mother—that the abuse was reported and a detective (Detective) at the Children's Justice Center interviewed Victim (the CJC interview). During the CJC interview, Victim could not identify exactly when the abuse happened, but she believed that the first incident occurred a few days after school started in August and the last incident took place sometime in December.

---

1. "When reviewing a bench trial, we recite the facts from the record most favorable to the findings of the trial court." *State v. Layman*, 953 P.2d 782, 784 n.1 (Utah Ct. App. 1998) (quotation simplified), *aff'd*, 1999 UT 79, 985 P.2d 911.

¶4     In 2018, the State charged JEG by petition with two allegations of sexual abuse of a child under 14 years old.[2] Based on the CJC interview, the petition stated that the first event occurred "[b]etween August 1, 2015 and August 31, 2015" and the second "[b]etween December 1, 2015 and December 31, 2015."

¶5     At trial, Victim detailed the last time JEG touched her genitals in the bedroom, but she could not remember the first time it happened, only that JEG had touched her "[m]ore than one time" and that it had all taken place when she was in second or third grade. Detective then testified that based on the CJC interview, it was "clear to [him] that these alleged incidents happened only when there were no adults in the apartment" and that the first incident occurred in "middle to late August." He later testified that he understood all the abuse happened "between August and December of 2015." A recording of the CJC interview was then admitted into evidence. In the interview, Victim told Detective that JEG committed the first instance of abuse on the "third or fourth day of school" in August 2015. Victim also told Detective that the last instance of abuse occurred near the time she and her family moved out of JEG's home to live with her grandmother.

¶6     JEG attempted to discredit Victim's account in three ways. First, he presented evidence that the abuse could not have taken place in August or December. Specifically, he contended that Victim's mother did not start working until October, suggesting that her mother would have been home during the alleged timeframe of the first instance of abuse in August, contradicting

_____

2. Given JEG's age at the time of the incidents in question, we recognize that the appropriate exercise of prosecutorial discretion might instead have led to a referral for counseling or a diversionary agreement.

Victim's consistent statements that no adults were present in the house when the abuse transpired. And concerning the last incident of abuse alleged to have occurred in December, JEG elicited testimony, including from Victim's mother, that Victim and her family moved out of JEG's family home in November, meaning no instance of abuse could have occurred in December. Second, JEG testified that he would not have abused Victim because he is homosexual. Third, JEG's mother testified that she kicked Victim's family out of the house after she caught her brother and Victim's mother having sex in the living room. JEG argued in closing that Victim's mother might have encouraged Victim to "fabricat[e] an allegation" against JEG to retaliate against JEG's mother and suggested this provided reasonable doubt that JEG committed the offenses.

¶7 After closing argument, the State moved to conform the petition to the evidence at trial to change the timeframe charged in the petition from "[b]etween August 1, 2015 and August 31, 2015" for the first allegation, and "[b]etween December 1, 2015 and December 31, 2015" for the second allegation, to "[o]n or about August 1, 2015 through December 31, 2015" for both allegations. JEG responded that the State could not amend the petition "after [it] has rested, especially not after the defense has rested." The juvenile court declined to rule on the motion at the time and gave the parties one week to brief the issue.

¶8 In his brief, JEG argued that under rule 4 of the Utah Rules of Criminal Procedure, his "due process rights would be prejudiced if the State were allowed to amend the Petition after the close of evidence, and after defense counsel's closing argument, when the crux of [his] defense at trial was based on the dates alleged in the Petition" and "because of the nature of the allegations in this case and the importance of the dates to both [Victim's] allegations and the credibility of defense witnesses." JEG also asserted that if the "Court were to allow the State to amend the Petition, [it] would also have to grant [him] a

new trial on the amended Petition, such that he could prepare a defense in accordance with the new allegations, in order to preserve his rights to due process."

¶9 The juvenile court granted the State's motion but ruled that "[a]lthough Rule 4 does not apply in Juvenile Court cases, it is clear that the defense prepared their case in relation to the specific dates listed in [the petition]" and "[i]f the State is permitted to amend its petition to conform to the evidence presented at trial . . . [JEG's] substantial rights of due process are prejudiced." The court therefore granted JEG a continuance to present additional trial testimony and exhibits, if he desired, to defend against the amended petition and ameliorate the prejudice it found.

¶10 At a subsequent scheduling conference, the court set future trial dates, but JEG conceded that he had no additional evidence to present. He subsequently filed an interlocutory appeal challenging the court's ruling, which we denied. Following our denial, JEG rejected the future trial dates and submitted the case to the juvenile court, with JEG's counsel explaining, "[A]fter reviewing all possible scenarios, we do not believe that it is possible to remedy or to mitigate the prejudice that my client has had in this case." The court subsequently found JEG delinquent on two counts of sexual abuse of a child under 14 years of age.[3]

¶11 JEG appeals.

---

3. The juvenile court's disposition of the case was rather gentle: probation, therapy, and some community service. JEG does not challenge the disposition on appeal.

ISSUES AND STANDARDS OF REVIEW

¶12    JEG raises three issues on appeal. First, he argues that the juvenile court erred by allowing the State to amend the petition after the close of evidence and after closing arguments, thereby prejudicing him and violating his due process rights under the United States and Utah constitutions.[4] "[W]e review the court's decision to permit the prosecution to amend the [petition] only for an abuse of discretion." *State v. Hamblin*, 2010 UT App 239, ¶ 26, 239 P.3d 300.

¶13    Second, JEG contends that the juvenile court violated his right to be free from double jeopardy by allowing the State to amend the petition. "We review the trial court's legal conclusions for correctness." *State v. Larsen*, 2000 UT App 106, ¶ 10, 999 P.2d 1252.

¶14    Third, JEG asserts that the juvenile court erred by finding the State met its burden to prove the allegations in the amended petition beyond a reasonable doubt. "When reviewing a juvenile court's decision for sufficiency of the evidence, we must consider all the facts, and all reasonable inferences which may be drawn therefrom, in a light most favorable to the juvenile court's determination, reversing only when it is against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *In re V.T.*, 2000 UT App 189, ¶ 8, 5 P.3d 1234 (quotation simplified).

---

4. Although JEG asserts that the juvenile court's decision violated his rights under the Utah Constitution, he has not undertaken a separate analysis to establish that he would receive greater protections under the Utah Constitution. Accordingly, we do not consider whether JEG's claim would have a different outcome under the Utah Constitution.

ANALYSIS

I. Amended Petition

¶15    JEG argues that the juvenile court misapplied rule 4 of the Utah Rules of Criminal Procedure by allowing the State to amend the petition after the close of evidence and closing arguments, "thereby substantially prejudicing [his] rights, including the right to due process." Before beginning our analysis, we note that the mission of the juvenile court in addressing delinquency is to remediate behavioral problems and address the particular needs of juvenile offenders, especially, as here, with very young wrongdoers. *See* Utah Code Ann. § 78A-6-102(5)(b), (g) (LexisNexis 2018)[5] (stating that "[t]he purpose" of the juvenile court is, among other things, to "order appropriate measures to promote guidance and control . . . as an aid in the prevention of future unlawful conduct and the development of responsible citizenship" and to "act in the best interests of the minor in all cases"). Although there is an overlay of due process rights under *In re Gault*, 387 U.S. 1 (1967), and its progeny, delinquency proceedings in juvenile court ultimately are civil proceedings and the rules of criminal procedure do not apply across the board. *See In re L. G. W.*, 641 P.2d 127, 130 (Utah 1982) ("The informal and flexible procedures of the juvenile court need not conform with all of the requirements of a criminal trial.") (quotation simplified). But "[i]t is well settled that juvenile court procedures must [still] conform to the fundamental requirements of due process and fair treatment." *Id.* at 129.

---

5. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from those now in effect, we cite the current version of the Utah Code for convenience.

¶16    Here, even if rule 4 applied to the proceeding, the juvenile court ameliorated any potential prejudice by providing JEG ample opportunity to present additional evidence or to submit additional documents. Rule 4 provides that "[t]he court may permit an information to be amended after the trial has commenced but before verdict if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced."[6] Utah R. Crim. P. 4(d). Recognizing the potential prejudice to JEG, the court ruled that this prejudice could be cured through a continuance so that JEG could "present additional trial testimony and exhibits in order to defend the amended petition." Thus, JEG cannot demonstrate on appeal that the court erred because he was granted, but rejected, the very thing to which he was entitled under rule 4. *See State v. Wilson*, 771 P.2d 1077, 1085 (Utah Ct. App. 1989) ("Whenever the prosecution changes its position, a defendant may seek a continuance but the failure of a defendant to seek [or accept] a continuance negates any claim of surprise and amounts to a waiver of any claim of variance.") (quotation simplified). The same result obtains as a matter of due process. *See State v. Fulton*, 742 P.2d 1208, 1215 (Utah 1987) ("[W]henever the prosecution changes its position, a defendant may seek a continuance. If the trial court finds the variance to be prejudicial, *it must grant a continuance* as a matter of right.") (emphasis added); *State v. Myers*, 302 P.2d 276, 280 (Utah 1956) ("It would be a mockery of the constitutional rights of [the] defendant to allow the state to falsely state the particulars of the offense charged and then without amendment and *without giving defendant additional time* to meet new evidence beyond those particulars obtain a conviction founded on said evidence.") (emphasis added).

---

6. It is undisputed that "no additional or different offense" was charged in the amended petition. Utah R. Crim. P. 4(d).

¶17    Furthermore, JEG received nearly the exact remedy he requested from the juvenile court when he asserted that if the "Court were to allow the State to amend the Petition, [it] would also have to grant [him] a new trial on the amended Petition, such that he could prepare a defense in accordance with the new allegations in order to preserve his rights to due process." Although the court did not grant him a new trial, it offered JEG additional trial dates and a sufficient opportunity to "prepare a defense in accordance with the new allegations," just as he asked, and just as due process required and rule 4 would require, if applicable. Moreover, JEG has not demonstrated that the court's course of action was insufficient to cure the prejudice it recognized.

¶18    We therefore agree with the State that "[p]rejudicial error happens only when the defendant is foreclosed from preparing a defense, not when the amendment undermines previously prepared defenses." *See State v. Taylor*, 2005 UT 40, ¶ 9, 116 P.3d 360 ("As long as a defendant is sufficiently apprised of the State's evidence upon which the charge is based so that the defendant can prepare to meet that case, the constitutional requirement is fulfilled.") (quotation simplified). *Cf. State v. Wilcox*, 808 P.2d 1028, 1032 (Utah 1991) ("The right to adequate notice in the Utah Constitution requires the prosecution to state the charge with sufficient specificity to protect the defendant from multiple prosecutions for the same crime and *to give notice sufficient for the one charged to prepare a defense*.") (emphasis added). Thus, JEG's "failure to [accept the] continuance is fatal to his claim, and accordingly, we affirm the trial court's decision." *See Wilson*, 771 P.2d at 1085.

## II. Double Jeopardy

¶19    JEG argues that the juvenile court violated his right to be free from double jeopardy by allowing the State to amend the petition and "then reopening the trial stage for the defense to

present further evidence addressing the amended petition." The Double Jeopardy Clause provides that no person "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The constitutional guarantee against double jeopardy affords a criminal defendant three separate protections by prohibiting: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *State v. Miller*, 747 P.2d 440, 444 (Utah Ct. App. 1987). Assuming this jurisprudence is fully applicable to the juvenile delinquency context, it is undisputed that JEG was not subject to multiple punishments for the same offense, and thus the only way JEG could have been subjected to double jeopardy is if he was required to defend against a second prosecution for offenses of which he had already been acquitted or convicted.

¶20    JEG did not suffer double jeopardy here because he was not subjected to another prosecution for abuse of a child under age 14 after an acquittal or a conviction following the State's amendment of the petition. His case was still open and the court had not yet made its decision. JEG argues that although the juvenile court had not made its final decision before ruling on the State's motion to amend the petition, he was subjected to double jeopardy because, "[h]ad the State not moved to amend the Petition after hearing [his] final argument and theory of the case, it is almost certain that the Juvenile Court would have ruled that same day immediately after closing arguments." But in making this argument, JEG does not acquaint us with any authority in support of the proposition that an individual's constitutional protections against double jeopardy can be violated before a verdict in a case is reached based on whatever

step the court would otherwise have taken next.[7] To the contrary, case law is clear that a defendant's right to be free from double jeopardy can be violated only after a final verdict has been reached. *See, e.g.*, *Arizona v. Washington*, 434 U.S. 497, 505, 509 (1978) (holding that district courts "may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial" because no verdict has been reached, and "[u]nlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused"); *State v. Trafny*, 799 P.2d 704, 709 (Utah 1990) (holding that the double jeopardy clause protects only defendants who are subject to a "second prosecution for the same offense *after* acquittal . . . [or] *after* conviction") (emphasis added) (quotation otherwise simplified); *State v. Strand*, 674 P.2d 109, 114 (Utah 1983) (holding that the defendant had "not been twice put in jeopardy for the same offense" as a result of an amended information).

¶21 Thus, because the juvenile court had not reached a final decision in this case with respect to JEG's delinquency, the

---

7. JEG relies on the single criminal episode statutory scheme in sections 76-1-402 and 76-1-403 of the Utah Code to support his double jeopardy argument. But "the analysis for a double jeopardy challenge is distinct from the analysis under the single criminal episode statute," *Salt Lake City v. Josephson*, 2019 UT 6, ¶ 13, 435 P.3d 255, which "adopts a species of *res judicata* or claim preclusion for criminal cases—barring prosecutions for *different offenses* committed as part of a single criminal episode," *State v. Ririe*, 2015 UT 37, ¶ 6, 345 P.3d 1261 (emphasis in original). There is no suggestion in the case before us that the amended petition charged different offenses arising out of a single criminal episode, so that statute is inapplicable.

proceeding was still in process, and JEG was not subjected to double jeopardy when the court allowed the State to amend the petition.

### III. Sufficiency of the Evidence

¶22   Lastly, JEG argues that "the juvenile court erred by finding the State met its burden to prove the allegations in the petition beyond a reasonable doubt, even after the State amended the petition." In juvenile delinquency proceedings, the State's petition must contain "the date and place of the offense,"[8] Utah R. Juv. P. 17(a)(1), and "the state has the burden to prove the allegations of the petition beyond a reasonable doubt," *id.* R. 24(b)(6). "When reviewing a juvenile court's decision for sufficiency of the evidence, we must consider all the facts, and all reasonable inferences which may be drawn therefrom, in a light most favorable to the juvenile court's determination." *In re P.G.*, 2015 UT App 14, ¶ 20, 343 P.3d 297 (quotation simplified). And "we will reverse that determination only when it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *Id.* (quotation simplified).

¶23   Here, the amended petition alleged that the two instances of sexual abuse occurred sometime "[o]n or about August 1, 2015 through December 31, 2015." The crux of JEG's attack on appeal is that "the State . . . failed to meet the burden of proof given that all the evidence alleged that the incident(s) occurred in August and/or December, which was impossible." But the amended petition, unlike the original petition, was consistent with the incidents taking place at some point between October, when

---

8. Time is not an "express element of the statute under which [JEG] was charged." *See State v. Robbins*, 709 P.2d 771, 772 (Utah 1985). *See also* Utah Code Ann. § 76-5-404.1 (LexisNexis 2017).

Victim's mother was working and out of the house, and November, when Victim's family moved out of the house. And although Victim stated during the CJC interview that the incidents occurred in August and December, she also testified that they happened after JEG walked her home from school when no other parent was home. It was reasonable for the juvenile court to infer, as it did, that the abuse happened between October and November, i.e., that Victim was wrong about the specific months but right about the timeframe suggested by her recollection that no adults were home right after school. This inference was appropriate because Victim and JEG were in school during this time as well, and JEG would have walked her home during these months and would have been at home with Victim without any adults present. Such an inference is appropriate because children often have difficulty remembering the specific dates of abuse, especially when it occurs more than once, as was the case here. *See State v. Wilcox*, 808 P.2d 1028, 1033 (Utah 1991) ("The problem of young children who are unable to specify a date on which abuse occurred or a location where it occurred is exacerbated by situations in which the abuse occurred on many occasions over a long period of time, a not-uncommon occurrence."); *State v. Robbins*, 709 P.2d 771, 773 (Utah 1985) ("We recognize that children are often not able to identify with a high degree of reliability, and sometimes not at all, when an event in the past took place."). Thus, Victim's inability to remember the specific date is not fatal to the State's case. *See State v. Fulton*, 742 P.2d 1208, 1213 (Utah 1987).

¶24 Although the State had difficulty "establish[ing] the time and date of the offense" and had to amend the petition to conform to the evidence presented at trial, which "will almost always reduce the credibility of the prosecution's case," it does not compel the conclusion that the State failed to prove the allegations beyond a reasonable doubt. *See id.* at 1213 n.6. In essence, this is a he-said-she-said case, and in such cases, given

the factfinder's advantaged position in observing the witnesses firsthand, it is the factfinder's responsibility, "not the appellate court's[,] to weigh that evidence and make a determination of fact." *State v. Skinner*, 2020 UT App 3, ¶ 35, 457 P.3d 421 (quotation simplified). And here, the court, having seen firsthand Victim's struggle to recall the exact dates, nonetheless found that "[t]he testimony provided by [Victim] was credible and consistent with [the CJC] interview." JEG's attack on Victim's credibility on appeal, based on her inability to recall more precisely the dates of the abuse that occurred years ago, does not overcome the juvenile court's credibility determination. Thus, given Victim's consistent testimony of abuse and the court's explicit finding with respect to Victim's credibility, which finding JEG has not shown to be clearly erroneous, we cannot say there was insufficient evidence to support the court's ruling on delinquency. *See In re P.G.*, 2015 UT App 14, ¶ 20.

## CONCLUSION

¶25    The juvenile court did not err in allowing the State to amend its petition after closing argument because any prejudice JEG suffered from that amendment was ameliorated by the court's offer to continue the case and allow JEG ample time to prepare a defense to the amended petition. The amendment to the petition likewise did not violate JEG's constitutional protections against double jeopardy because the court had not issued a verdict prior to the petition being amended. Finally, there was sufficient evidence for the court to adjudge JEG delinquent, beyond a reasonable doubt.

¶26    Affirmed.

_____