2000 Utah Ct. App. 189

STATE of Utah, in the interest of V.T., a person under eighteen years of age.

State of Utah, Plaintiff and Appellee,

v.

V.T., a minor, Defendant and Appellant.

No. 990380–CA.

Court of Appeals of Utah.

June 22, 2000.

## OPINION

ORME, Judge:

¶ 1 V.T. appeals the juvenile court's adjudication that by his continued presence during the crime, he was an accomplice to theft, a class A misdemeanor, in violation of Utah Code Ann. § 76–6–404 (1999). We reverse.

## BACKGROUND

¶ 2 On June 12, 1998, V.T. and two friends, "Moose" and Joey, went to a relative's apartment to avoid being picked up by police for curfew violations. The boys ended up spending the entire night at the apartment.

¶ 3 The next morning, the relative briefly left to run an errand, while the boys remained in her apartment. She returned about fifteen minutes later to find the boys gone, the door to her apartment wide open, and two of her guns missing. She immediately went in search of the group and found them hanging out together near her apartment complex. She confronted the boys about the theft of her guns and demanded that they return them to her. When they failed to do so, she reported the theft to the police.[1]

¶ 4 Two days after the theft of her guns, she discovered that her camcorder, which had been in the apartment when the boys visited, was also missing, and she immediately reported its theft to the police. The police found the camcorder at a local pawn shop, where it had been pawned on the same day the guns were stolen.

¶ 5 Still inside the camcorder was a videotape featuring footage of V.T., Moose, and Joey. The tape included a segment where Moose telephoned a friend, in V.T.'s presence, and discussed pawning the stolen camcorder. V.T. never spoke or gestured during any of this footage.[2]

Joel Berrett, Roosevelt, for Appellant.

Jan Graham, Atty. Gen., and Karen A. Klucznik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and ORME.

1. A few days after confronting the boys about her stolen guns, one of the boys returned one of the guns to her and she found the butt of the other gun on her porch.

2. The videotape was shown at trial, but was never admitted into evidence and is therefore not part of the record on appeal. As a result, we have not seen any of the footage of V.T. Both parties, however, are in agreement as to what the videotape shows—a silent V.T., being filmed by Joey, during which time Moose talks to another person on the phone about selling the stolen camcorder to a pawn shop.

¶ 6 V.T. was eventually picked up by the police, while riding in a car with Moose. V.T. was charged with two counts of theft of a firearm; one count of theft, relating to the camcorder; and, for having initially given the police a phony name, one count of giving false information to a peace officer, a violation of Utah Code Ann. § 76–8–507 (1999).

¶ 7 The juvenile court held hearings on September 22, 1998 and January 29, 1999. V.T. was tried under an accomplice theory on the three theft charges. The court found that V.T. had committed class A misdemeanor theft of the camcorder and had provided false information to a peace officer.[3] The juvenile court summarized the basis for its adjudication concerning the camcorder theft as follows:

> I am going to find him guilty and I think the additional information that I have here that brings me peace of mind is that he was present a second time, he was shown on the camcorder when the camcorder was being handled at a time when he could've distanced himself from the activity. Not only do I have him there once with the group ... on the second incident ... there is no gap on him being there when [the camcorder] is being handled and talked about and used in the confines of a room with a group of friends and those who were involved in this illegal activity.

V.T. appeals his adjudication concerning the theft of the camcorder.

## ISSUE AND STANDARD OF REVIEW

¶ 8 The sole issue presented by V.T. is whether there was sufficient evidence to support the adjudication that he was an accomplice in the theft of the camcorder. When reviewing a juvenile court's decision for sufficiency of the evidence, we must consider all the facts, and all reasonable inferences which may be drawn therefrom, in a light most favorable to the juvenile court's determination, *see State v. Layman*, 1999 UT 79, ¶ 12, 985 P.2d 911, reversing only when it is "against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake

has been made." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).

## ANALYSIS

¶ 9 Utah's accomplice liability statute, Utah Code Ann. § 76–2–202 (1999), provides:

> Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.

As with any other crime, the State must prove the elements of accomplice liability beyond a reasonable doubt. *See State v. Lopes*, 1999 UT 24, ¶ 11, 980 P.2d 191; *State v. Labrum*, 959 P.2d 120, 123 (Utah Ct.App. 1998).

¶ 10 The State argues that V.T.'s continued presence during the theft and subsequent phone conversation about selling the camcorder, coupled with his friendship with the other two boys, is enough evidence to support the inference that he had "encouraged" the other two in committing the theft and that he is therefore an accomplice to the crime. *Black's Law Dictionary* defines encourage as: "[t]o instigate; to incite to action; to embolden; to help." *Black's Law Dictionary* 547 (7th ed.1999). The plain meaning of the word confirms that to encourage others to take criminal action requires some form of active behavior, or at least verbalization, by a defendant. Passive behavior, such as mere presence—even continuous presence—absent evidence that the defendant affirmatively did something to instigate, incite, embolden, or help others in committing a crime is not enough to qualify as "encouragement" as that term is commonly used.

¶ 11 The case law in Utah is consistent with this definition: " 'Mere presence, or even prior knowledge, does not make one an accomplice' " to a crime absent evidence

---

3. The juvenile court concluded there was insufficient evidence presented to support a finding that V.T. had been an accomplice in the theft of the guns.

showing—beyond a reasonable doubt—that defendant "advise[d], instigate[d], encourage[d], or assist[ed] in perpetuation of the crime." *Labrum*, 959 P.2d at 123 (quoting *State v. Kerekes*, 622 P.2d 1161, 1166 (Utah 1980)).

■ ¶ 12 In *Labrum*, the defendant was convicted of attempted criminal homicide due to his participation in a drive-by shooting.[4] *See* 959 P.2d at 122. The juvenile court gave defendant an enhanced sentence, based on its finding that defendant had acted in concert with two or more persons in committing the shooting and was therefore subject to the "group crime enhancement" contained in Utah Code Ann. § 76-3-203.1(1)(a) & (b) (1999). *See Labrum III*, 959 P.2d at 122. For purposes of that statute, "in concert" means that the other individuals who participated with defendant would be criminally liable for the offense as accomplices under Section 76-2-202. *See* Utah Code Ann. § 76-3-203.1(1)(b) (1999).

¶ 13 On appeal, we held that there was insufficient evidence to find that Behunin, one of the passengers in the car who defendant was alleged to have acted "in concert" with, would be guilty if tried under an accomplice liability theory for the shooting. *See Labrum III*, 959 P.2d at 123-24. The juvenile court's findings supporting the group crime enhancement showed only that Behunin had been present before, during, and after the shooting and later was in defendant's presence when he boasted to a third party about the shooting. *See id.* Although Behunin apparently endorsed the boasting, we held these findings were insufficient to show that he solicited, requested, commanded, encouraged, or intentionally aided Labrum in committing the shooting.[5] *See id.*

¶ 14 Two other Utah cases further illuminate the level of participation necessary to establish criminal liability as an accomplice. In *State v. Smith*, 706 P.2d 1052 (Utah 1985), our Supreme Court concluded there was sufficient evidence to convict Smith of aggravated robbery and theft based on a theory of accomplice liability. *See id.* at 1056-57. But in that case, there was testimony that Smith had recruited one of his co-defendants to aid in the robbery, that he selected the house to rob, and that he provided and drove the getaway car to and from the crime scene. *See id.* at 1056. This testimony was suffi-

---

4. Our 1998 *Labrum* decision was actually the third in a series. The juvenile court initially sentenced Labrum to fifteen years in prison for attempted criminal homicide plus an additional six-year group crime enhancement. *See State v. Labrum*, 881 P.2d 900, 902 (Utah Ct.App.1994) (*Labrum I*). Labrum appealed the sentence based on the juvenile court's failure to make written findings supporting the application of the enhanced sentence. *See id.*

On appeal, we upheld the sentence and declined to address the issue of the lack of written findings due to Labrum's failure to raise that issue before his sentencing. *See id.* at 905-06. On certiorari, the Utah Supreme Court overruled our decision upholding the imposition of the enhanced sentence and held that, defendant's apparent waiver notwithstanding, the group crime enhancement statute required the entry of written findings supporting its imposition. *See State v. Labrum*, 925 P.2d 937, 940 (Utah 1996) (*Labrum II*). Thus, the Supreme Court vacated the enhanced sentence and remanded for resentencing. *See id.* at 941.

On remand, the sentencing court again applied the group crime enhancement to Labrum's sentence, this time basing its decision on several factual findings, and Labrum again appealed. *See State v. Labrum*, 959 P.2d 120, 122 (Utah Ct.App.1998) (*Labrum III*). In that case, as more fully explained in the text, we held that the juvenile court's factual findings were insufficient to find that the other passenger had acted "in concert" with Labrum and therefore the imposition of the group crime enhancement to Labrum's sentence was improper. *See id.* at 122-24.

5. The State attempts to distinguish our decision in *Labrum III* on the basis of the less deferential standard of review we applied to one of the sentencing court's findings of fact. *See Labrum III*, 959 P.2d at 123 n. 6. This argument is wide of the mark in the context of this case. We rely upon *Labrum III*, not for its discussion concerning the standard of review of a court's findings of fact, but for its discussion of what level of participation by a defendant is legally sufficient to impose criminal liability under section 76-2-202. The State makes no attempt in its brief to explain how the actions taken by Behunin in *Labrum III* would not be sufficient to impose accomplice liability while the almost identical action—or more precisely, inaction—by V.T. is somehow sufficient in this case. At oral argument, the State explained this case is different because, basically, V.T. was present on more occasions, or for longer periods, than Behunin was in *Labrum III*. As we explain in this opinion, it is the *quality* of one's actions, not their *quantity*, that might make one an accomplice. No amount of passive presence will render one an accomplice.

cient to show that Smith had solicited and intentionally aided his co-defendants in committing the robbery. *See id.* at 1056–57.

¶ 15 In *State v. Webb*, 790 P.2d 65 (Utah Ct.App.1990), we upheld Webb's conviction for aggravated robbery of a jewelry store under an accomplice theory. *See id.* at 84–85. Although the evidence was conflicting, there was testimony that Webb had solicited a co-defendant to steal the getaway car and give it to him, that Webb said he knew someone who would sell the stolen goods for them, and that he had sorted through the stolen jewelry with his partners-in-crime at a friend's house. *See id.* This evidence was sufficient to find that Webb had "solicited, requested, commanded, encouraged, or intentionally aided" in the robbery. *Id.* at 85.

¶ 16 These three cases make it clear that something more than a defendant's passive presence during the planning and commission of a crime is required to constitute "encouragement" so as to impose accomplice liability in Utah. There must be evidence showing that the defendant engaged in some active behavior, or at least speech or other expression, that served to assist or encourage the primary perpetrators in committing the crime.[6]

¶ 17 The juvenile court's conclusion that V.T. was an accomplice to the camcorder theft was not supported by the evidence in this case. No evidence whatsoever was produced indicating V.T. had encouraged—much less that he solicited, requested, commanded or intentionally aided—the other two boys in the theft of the camcorder.[7]

¶ 18 Instead, the evidence, read in the light most favorable to the juvenile court's decision, shows only that V.T. was present with the other two youths, albeit at multiple times: when the camcorder was stolen; when they were confronted about the theft of the guns; and when the plan to pawn the camcorder was being discussed by Moose. In sharp contrast to *Smith* and *Webb*, however, there is no indication in the record that V.T. had instigated, incited to action, emboldened, helped, or advised the other two boys in planning or committing the theft. The circumstantial evidence presented in this case, which only shows V.T.'s continuous presence during the events surrounding the theft, is sufficient for finding only that V.T. was a witness—not an accomplice—to the theft of the camcorder.[8] *See Labrum III*, 959 P.2d at 123–24. And knowledge of a theft, without more, does not make one an accomplice. *See People v. Taylor*, 219 Ill. App.3d 47, 161 Ill.Dec. 835, 579 N.E.2d 383, 385, *appeal denied*, 142 Ill.2d 663, 164 Ill. Dec. 926, 584 N.E.2d 138 (1991).

**6.** This approach to accomplice liability is consistent with that taken in other jurisdictions. *See, e.g., United States v. Pedroza*, 78 F.3d 179, 183–84 (5th Cir.1996); *United States v. Luciano–Mosquera*, 63 F.3d 1142, 1149–50 (1st Cir.1995), *cert. denied sub nom. Pagan–San–Miguel v. United States*, 517 U.S. 1234, 116 S.Ct. 1879, 135 L.Ed.2d 174 (1996); *People v. Taylor*, 219 Ill. App.3d 47, 161 Ill.Dec. 835, 579 N.E.2d 383, 385 ("[C]riminal responsibility may not be imposed simply through guilt by association, nor by the Defendant's mere presence at the scene, nor even by the Defendant's knowledge that the offense is being committed."), *appeal denied*, 142 Ill.2d 663, 164 Ill.Dec. 926, 584 N.E.2d 138 (1991); *State v. Roberts*, 80 Wash.App. 342, 908 P.2d 892, 899–900 (1996).

**7.** We would, of course, conclude otherwise had the evidence shown, for example, that V.T. had suggested to his two friends that they go rob the apartment, that he had pointed out where the camcorder was kept, that he had helped carry the stolen goods out, or that he helped select the pawn shop at which to sell the camcorder.

**8.** We recognize that in some circumstances a finding of accomplice liability can be properly based on circumstantial evidence. *See State v. Beltran–Felix*, 922 P.2d 30, 36 (Utah Ct.App. 1996) (discussing evidence from which fact finder could infer criminal intent to support accomplice liability). There might well be a case where the fact finder could infer, from the objective facts, that the only plausible conclusion is the existence of an accomplice who aided the other defendant(s) in the commission of a crime.

For example, what if the item stolen from the apartment had not been a small camcorder but instead was a 500 pound television console? If the State had produced evidence that it would take at least two people to carry off such an item while a third held the spring-equipped door beyond its normal resistance point, the juvenile court could have reasonably inferred from the evidence that V.T. was not only present when the television was stolen, but that he must have helped in either a carrying or door-holding capacity and was therefore an accomplice to the crime.

¶ 19 The juvenile court's conclusion of accomplice liability was heavily influenced by the videotape footage of V.T., who at the time of the filming was necessarily in the presence of the camcorder, after it had been stolen. In fact, the court found that even though there was not enough evidence presented to find that V.T. was an accomplice in the theft of the guns, which were stolen at the same time and from the same apartment as the camcorder, the videotape footage was enough to find that V.T. was an accomplice to the camcorder theft.[9] The juvenile court's heavy reliance on this footage shows that it made its conclusion of accomplice liability based not on any evidence that V.T. had encouraged the others to steal the camcorder, as required by section 76–2–202, but instead on the sole fact that V.T. allowed himself to remain in the company of Joey, Moose, and the stolen camcorder before, during, and immediately after the theft. As explained above, this "guilt by association" theory is not a basis on which accomplice liability can be premised under Utah law.

---

9. The court noted that the videotape showed that V.T. "was present a second time, he was shown on the camcorder when the camcorder was being handled at a time when he could've distanced himself from the activity."

## CONCLUSION

¶ 20 The facts in this case prove only that V.T. was present before, during, and after the theft of the camcorder. The lack of any evidence showing that he at least encouraged the other defendants in stealing the camcorder precludes the juvenile court from finding, pursuant to Utah Code Ann. § 76–2–202 (1999), that V.T. was an accomplice to that theft. Accordingly, we reverse the juvenile court's adjudication that V.T. was an accomplice in the theft of the camcorder.

¶ 21 WE CONCUR: RUSSELL W. BENCH, Judge, and JUDITH M. BILLINGS, Judge.