2010 UT App 228

**STATE of Utah, Plaintiff and Appellee,**

v.

**Luis CRISTOBAL, Defendant and Appellant.**

**No. 20090146–CA.**

Court of Appeals of Utah.

Aug. 19, 2010.

Aaron P. Dodd, Provo, for Appellant.

Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and ROTH.

## OPINION

ROTH, Judge:

¶ 1 Defendant Luis Cristobal appeals the trial court's denial of his motion for a directed verdict, claiming that there was insufficient evidence to support enhancement of his criminal mischief conviction to a second degree felony for having "acted in concert with two or more persons." *See* Utah Code Ann. § 76–3–203.1(1), (3)(c), (4)(g) (Supp.2010).[1] Because we conclude that there was insufficient evidence from which the jury could conclude beyond a reasonable doubt that Cristobal was aided or encouraged by two or more persons, we vacate the enhancement.

1. For convenience to the reader, we cite to the current version of the Utah Code.

2. When questioned by the police about why he was at the Savers so late at night, Cristobal responded that he, the juvenile, and the two females were supposed to pick up a friend there.

## BACKGROUND

¶ 2 A security guard was patrolling the area around a Savers store in Orem at around 3:00 a.m. when he saw a car parked in the service area behind the store that had not been there during his previous patrol. The car had its lights off and was parked next to a Savers delivery truck. A male (the unidentified male) was standing outside the car, looking through a window and talking to the car's occupants—two younger teenage girls. The security guard pulled into the service area and drove up to the front of the car, illuminating the car with his vehicle's headlights. The unidentified male ran away; he was not pursued and was never identified.

¶ 3 The security guard observed blue and silver gang-related graffiti on the store and the delivery truck as well as on a nearby portable storage unit and dumpster. As he exited his vehicle, the security guard noticed that the paint looked wet, and he could smell a strong odor of paint fumes. The graffiti had not been there during his previous patrol.

¶ 4 As the security guard approached the two females in the car, he saw in his peripheral vision another male (the juvenile) run behind the portable storage unit, holding two cans of spray paint. As the security guard walked over to the storage unit, he was approached from behind by the juvenile and Cristobal. He detained them both and called the police. Both Cristobal and the juvenile had either blue or silver paint on their fingers, and the security guard found two cans of spray paint—one silver and one blue—hidden behind the storage shed; both cans were missing their lids. A blue lid from a spray paint can was found inside the car with the two females; a silver lid from a spray paint can was found between the Savers delivery truck and the passenger side of the car.[2]

Upon their arrival, they saw a group of people in the service area, and when he and the juvenile went to see who was there, the other people ran away. According to Cristobal, that is when the security guard arrived and discovered the graffiti.

¶ 5 Cristobal was charged with criminal mischief, a third degree felony,[3] *see* Utah Code Ann. § 76–6–106(2)(c), (3)(b)(ii) (2008), enhanced to a second degree felony under Utah Code section 76–3–203.1 (the Group Crime Enhancement), for having "acted in concert with two or more persons," *id.* § 76–3–203.1(1), (3)(c), (4)(g) (Supp.2010). At the close of the State's case at trial, Cristobal moved for a directed verdict on the application of the Group Crime Enhancement, arguing that there was insufficient evidence that he had been "aided or encouraged by at least two other persons in committing" criminal mischief. *See id.* § 76–3–203.1(1)(b). The trial court denied the motion. A jury found Cristobal guilty of criminal mischief with the Group Crime Enhancement. Cristobal appeals.

## ISSUE AND STANDARD OF REVIEW

■■■ ¶ 6 Cristobal challenges the trial court's denial of his motion for a directed verdict, arguing that there was insufficient evidence that he had acted in concert with two or more persons under the Group Crime Enhancement. *See id.* § 76–3–203.1.

> In reviewing the denial of a motion for a directed verdict based on a claim of insufficiency of the evidence, we will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, [w]e conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt.

*State v. Montoya,* 2004 UT 5, ¶ 29, 84 P.3d 1183 (alteration in original) (internal quotation marks omitted).

■■■ ¶ 7 Because the evidence supporting application of the Group Crime Enhancement is circumstantial, the sufficiency of that evidence turns "on the inferences that can be reasonably and logically drawn from the evidence." *See State v. Workman,* 852 P.2d 981, 985 (Utah 1993).

> When, as here, the evidence consists solely of ... circumstantial evidence, the role of the reviewing court is to determine (1) whether there is any evidence that supports each and every element of the crime charged, and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove each legal element of the offense beyond a reasonable doubt. A guilty verdict is not legally valid if it is based solely on inferences that give rise to only remote or speculative possibilities of guilt.

*Id.*; *see also United States v. Jones,* 49 F.3d 628, 632 (10th Cir.1995) ("[When a] prosecution is built upon circumstantial evidence, the government depends upon inferences to carry its burden .... [and] probative inferences 'must be more than speculation and conjecture.'" (quoting *Sunward Corp. v. Dun & Bradstreet, Inc.,* 811 F.2d 511, 521 (10th Cir. 1987) ("Although a jury is entitled to draw reasonable inferences from circumstantial evidence, reasonable inferences themselves must be more than speculation and conjecture."))).

¶ 8 On appeal, Cristobal does not challenge his underlying conviction for criminal mischief. Cristobal further concedes that there was sufficient evidence from which the jury could conclude that he had acted in concert with at least one other person—the juvenile. The issue before us, therefore, is whether there was sufficient evidence from which the jury could conclude beyond a reasonable doubt that Cristobal had acted in concert with the unidentified male.[4]

## ANALYSIS

### I. The Sufficiency of the Evidence

¶ 9 The Group Crime Enhancement statute provides that a person convicted of criminal

---

3. The amount of damage was estimated at between $1000 and $5000, causing the criminal mischief to be designated a third degree felony. *See* Utah Code Ann. § 76–6–106(b)(ii) (2008) (stating that criminal mischief is a "third degree felony if the actor's conduct causes or is intended to cause pecuniary loss equal to or in excess of $1,000 but is less than $5,000 in value").

4. For reasons discussed later, *see infra* ¶ 13 n. 5, the State concedes that there is insufficient evidence to apply the Group Crime Enhancement under the theory that Cristobal acted in concert with the two females.

mischief "is subject to an enhanced penalty for the offense ... if the trier of fact finds beyond a reasonable doubt that the person acted in concert with two or more persons." Utah Code Ann. § 76–3–203.1(1)(a) (Supp. 2010); *see also id.* § 76–3–203.1(4)(g) (applying enhancement to property destruction offenses, including criminal mischief). " 'In concert with two or more persons' ... means the defendant was aided or encouraged by at least two other persons in committing the offense...." *Id.* § 76–3–203.1(1)(b).

¶ 10 For there to be sufficient evidence to support application of the Group Crime Enhancement, the State must have presented some evidence from which the jury could conclude beyond a reasonable doubt that Cristobal had been aided or encouraged by the unidentified male in committing criminal mischief. *See Montoya,* 2004 UT 5, ¶ 29, 84 P.3d 1183. In the absence of direct evidence, the jury's conclusion must be based upon reasonable inference and not mere speculation. *See Workman,* 852 P.2d at 985; *see also Jones,* 49 F.3d at 632; *Sunward Corp.,* 811 F.2d at 521. The State argues that the following facts support a reasonable inference that Cristobal was aided or encouraged by the unidentified male: (1) the unidentified male was present at the scene of the crime—an otherwise empty service area behind a Savers store, late at night, where graffiti had been recently painted; (2) the unidentified male was standing next to the car in which Cristobal had arrived at the scene and was talking to its occupants; (3) a spray paint can lid was located between the delivery truck and the passenger side of the car; and (4) the unidentified male fled from the scene upon the arrival of the security guard. Because these facts, whether considered separately or together, do not support a reasonable inference that the unidentified male aided or encouraged Cristobal in committing criminal mischief, we conclude that there is insufficient evidence to support application of the Group Crime Enhancement.

¶ 11 The Group Crime Enhancement statute specifically requires that the defendant be aided or encouraged by two or more people. *See* Utah Code Ann. § 76–3–203.1(1)(b). To "aid" is "to provide with

what is useful or necessary in achieving an end." *Webster's Ninth New Collegiate Dictionary* 66 (9th ed.1986); *see also Black's Law Dictionary* 81 (9th ed.2009) (defining "aid and abet" as "[t]o assist or facilitate the commission of a crime, or to promote its accomplishment"). And to "encourage" means " '[t]o instigate[,] to incite to action[,] to. embolden[, or] to help.' " *In re V.T.,* 2000 UT App 189, ¶ 10, 5 P.3d 1234 (first alteration in original) (quoting *Black's Law Dictionary* 547 (7th ed.1999)).

¶ 12 The State relies upon the unidentified male's presence at the scene of the crime as evidence that he aided or encouraged Cristobal. Based on the above definitions of "aid" and "encourage," it is apparent that "something more than ... passive presence during the ... commission of a crime is required to constitute [aiding or] 'encouragement.' " *See id.* ¶ 16. For instance, "[t]he plain meaning of the word ["encourage"] confirms that to encourage others to take criminal action requires some form of active behavior, or at least verbalization...." *Id.* ¶ 10. "Passive behavior, such as mere presence—even continuous presence—absent evidence that [action was taken] ... to instigate, incite, embolden, or help others in committing a crime is not enough to qualify as 'encouragement' as that term is commonly used." *Id.* Thus, "[t]here must be evidence showing ... some active behavior, or at least speech or other expression, that served to assist or encourage ... in committing the crime." *Id.* ¶ 16.

¶ 13 Under the Group Crime Enhancement statute, "it is not enough that others were present when the crime was committed[; r]ather, the quality of their involvement must rise to the level of participation described" in the statute: aiding or encouraging. *See State v. Labrum,* 959 P.2d 120, 123–24 (Utah Ct.App.1998) ("Mere presence, or even prior knowledge, does not make one an accomplice when he neither ... encourages [n]or assists in perpetration of the crime."); *see also id.* at 124 (recognizing that if the legislature had intended to enhance the sentences of those who commit crimes merely in the presence of two or more other persons, the statutory language would read differently). Although another person's

"mere presence at the scene of the crime affords no basis for" application of the Group Crime Enhancement, "conduct before and after the offense [is a] circumstance[ ] from which one's participation in the criminal [act] may be inferred." [5] *See In re M.B.*, 2008 UT App 433, ¶ 8, 198 P.3d 1007 (internal quotation marks omitted).[6]

¶ 14 The State also relies upon the unidentified male's flight from the scene as evidence that he aided or encouraged Cristobal. Like "mere presence" at the scene of a crime, "[f]light by itself is not sufficient to establish ... guilt ... but is merely a circumstance to be considered with other factors as tending to show a consciousness of guilt and therefore guilt itself." *State v. Holgate*, 2000 UT 74, ¶ 23 n. 6, 10 P.3d 346 (internal quotation marks omitted). So although "[f]light ... immediately following the commission of a crime [is an] element[ ] which may be considered as evidence of implication in that crime," *State v. Simpson*, 120 Utah 596, 236 P.2d 1077, 1079 (1951) (citing *State v. Marasco*, 81 Utah 325, 17 P.2d 919, 923 (1933)), "it is only a circumstance[, and i]t alone will not justify conviction of the defendant, in the absence of other evidence tending to connect him with the commission of the crime," *Marasco*, 17 P.2d at 923. *Cf. State v. Johnson*, 6 Utah 2d 29, 305 P.2d 488, 489 (1956) (concluding that there was sufficient evidence that the principal had been aided by the defendant where, in addition to the defendant's flight from the scene of the crime, the only entry into the building was through a second-story window and a ladder was hidden nearby but the principal was found inside the building, thus supporting a reasonable inference that the defendant had helped the principal into the building but removed the ladder before fleeing when the police arrived).[7]

¶ 15 Here, the unidentified male's mere presence at the scene of the crime is, in itself, insufficient to prove the active participation required for application of the Group Crime Enhancement. *See Labrum*, 959 P.2d at 123–24; *see also In re V.T.*, 2000 UT App 189, ¶¶ 10–16, 5 P.3d 1234. Further, the unidentified male's flight from the scene of the crime does not, in itself, prove his involvement but is a circumstance from which his involvement may be inferred. *See Holgate*, 2000 UT 74, ¶ 23 n. 6, 10 P.3d 346; *Marasco*, 17 P.2d at 923. The question presented by these facts, therefore, is whether the unidentified male's presence at and flight from the scene, when considered together and in conjunction with the other facts posited by the State, support a reasonable inference from which the jury could conclude beyond a reasonable doubt that the unidentified male aided or encouraged Cristobal.

¶ 16 "While it is sometimes subtle, there is in fact a difference between drawing a reasonable inference and merely speculating about possibilities." *State v. Hester*, 2000 UT App 159, ¶ 16, 3 P.3d 725. A reasonable inference "is 'a conclusion reached by considering other facts and deducing a logical con-

**5.** Because "mere presence" is insufficient for application of the Group Crime Enhancement, the State concedes, and we agree, that there is insufficient evidence that the two females aided or encouraged Cristobal because they were merely present at the scene of the crime, passively sitting in the car.

**6.** We recognize that *In re V.T.*, 2000 UT App 189, 5 P.3d 1234, and *In re M.B.*, 2008 UT App 433, 198 P.3d 1007, are cases interpreting Utah's accomplice liability statute, *see* Utah Code Ann. § 76–2–202 (2008), rather than the Group Crime Enhancement statute, *see id.* § 76–3–203.1 (Supp.2010). The rule, however, that mere presence is insufficient to infer participation in a criminal act is common to both statutes, as is the statutory language requiring aiding or encouragement and, therefore, active participation in the crime. *See In re M.B.*, 2008 UT App 433, ¶ 8,

198 P.3d 1007; *In re V.T.*, 2000 UT App 189, ¶¶ 10–11, 16, 5 P.3d 1234; *State v. Labrum*, 959 P.2d 120, 123–24 (Utah Ct.App.1998). We also note that the Group Crime Enhancement statute originally incorporated by reference the accomplice liability statute before it was amended to require only aiding or encouragement. *Compare* Utah Code Ann. § 76–3–203.1 (Supp.2010), *with id.* (1999).

**7.** The cases cited concern the inferences that may be drawn from a defendant's flight in determining his own guilt rather than the inferences that may be drawn from another person's flight in determining applicability of the Group Crime Enhancement. Because the question of the quality of the inferences that may be reasonably derived from certain facts is not necessarily driven by the differing legal contexts, we consider these cases to be usefully analogous.

sequence from them.'" *Id.* (quoting *Black's Law Dictionary* 781 (7th ed.1999)). Conversely, "speculation is defined as the 'act or practice of theorizing about matters over which there is no certain knowledge.'" *Id.* (quoting *Black's Law Dictionary* 1407 (7th ed.1999)).

> The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncracies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then *the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts....* [T]he essential requirement is that mere speculation not be allowed to do duty for probative facts after making due allowance for all reasonably possible inferences....

*Sunward Corp. v. Dun & Bradstreet, Inc.,* 811 F.2d 511, 521 (10th Cir.1987) (emphasis added) (citation and internal quotation marks omitted). Thus, the distinction between reasonable inference and speculation is intensely fact-based. When evidence supports only one possible conclusion, the quality of the inference rests on the "reasonable probability that the conclusion flows from the proven facts." *Id.* When the evidence supports more than one possible conclusion, none more likely than the other, the choice of one possibility over another can be no more than speculation; while a reasonable inference arises when the facts can reasonably be interpreted to support a conclusion that one possibility is more probable than another.

¶ 17 The State proposes that the unidentified male's presence at and flight from the scene of the crime, when considered together, support a reasonable inference that the unidentified male aided or encouraged Cristobal. But because the inferences that can be reasonably drawn from presence and flight do not alone support a conclusion that the unidentified male aided or encouraged

Cristobal in committing the crime, they cannot together support such a conclusion.[8] *See generally United States v. Pahulu,* 274 F.Supp.2d 1235, 1238 (D.Utah 2003) (mem.) ("While inferences drawn from facts in evidence are appropriate, inferences drawn from inferences are not."), *aff'd,* 108 F.Appx. 606 (10th Cir.2004). The unidentified male's presence at the scene of the crime at such a late hour while standing next to the car and talking to its occupants creates a reasonable inference that he knew Cristobal and the other people present. Given the location of the graffiti and the strong odor of spray paint, it is also reasonable to infer that the unidentified male was aware of the ongoing criminal activity. Further, it can be reasonably inferred that the unidentified male's flight from the scene of the crime was due to a guilty conscience. But there are at least two equally reasonable explanations for a guilty conscience under these circumstances: either that the unidentified male was involved in the crime as an active participant or that he was merely aware of the ongoing criminal activity and fled out of fear that he would be perceived as being an active participant because of his presence at the scene. Although it can be reasonably inferred from the unidentified male's presence at and flight from the crime scene that he knew Cristobal, was aware of the ongoing crime, and fled due to a guilty conscience, under these circumstances his presence and flight do not make it more probable that he was an active participant in the crime than the equally reasonable possibility that he was merely present during the crime. Thus, the unidentified male's presence at and flight from the crime scene, when considered together, do not support a reasonable inference that the unidentified male aided or encouraged Cristobal in committing criminal mischief.

¶ 18 In addition to the unidentified male's presence at and flight from the scene of the crime, the State relies upon the presence of a lid to a spray paint can, which was on the ground on the passenger side of the car, as

---

8. We note that to flee from the scene of a crime, one must first be present at the crime scene. One's flight, therefore, presupposes one's presence at the crime scene, and the combination of flight and presence does not enhance the quality of the inferences that may be drawn from such facts.

evidence that the unidentified male was an active participant in the crime. The State argues that the unidentified male's proximity to the spray paint can lid creates a reasonable inference that he handled the spray paint can and, therefore, participated in the graffiti.[9] An equally reasonable explanation, however, is that Cristobal and the juvenile were the ones to use the spray paint cans to graffiti the building and that the unidentified male was merely present during the crime. This is also a reasonable explanation given the fact that there were only two cans of spray paint ultimately found at the scene—both of which were seen in the juvenile's possession and later found in the area where Cristobal and the juvenile were caught—and that the lids matching those spray paint cans were found in and near their car. Further, this explanation is also plausible given the complete absence of any other fact linking the unidentified male to the graffiti, which is in contrast to the substantial evidence linking Cristobal and the juvenile to the graffiti, e.g., actual possession of a spray paint can with matching paint on their fingers and matching lids found in or near their car.

¶ 19 Another possible inference from these facts is that the unidentified male was acting as a lookout. There is, however, no evidence that the unidentified male was looking around for or was aware of the possible approach of others or that he shouted a warning or otherwise tried to alert Cristobal or the juvenile when the security guard approached. Cf. American Fork City v. Rothe, 2000 UT App 277, ¶ 9, 12 P.3d 108 (concluding that there was sufficient evidence to prove that defendant had acted as a lookout where he was continuously present during the shoplifting by following the perpetrator around the store while looking up and down the aisles). Rather, the evidence is to the contrary: the unidentified male was talking to the car's occupants, noticed that the security guard had pulled into the service area, and then simply fled without saying anything.[10]

¶ 20 In cases where a person's "mere presence" at the scene of a crime—when considered in conjunction with the surrounding circumstances—potentially indicated more involvement than do the facts presented here, this court has concluded that those circumstances did not support a reasonable inference of active participation in the crime. See, e.g., In re M.B., 2008 UT App 433, 198 P.3d 1007; In re V.T., 2000 UT App 189, 5 P.3d 1234; State v. Labrum, 959 P.2d 120 (Utah Ct.App.1998). In State v. Labrum, 959 P.2d 120 (Utah Ct.App.1998), the defendant asked to borrow a vehicle in the presence of two other people, his stated purpose being to " 'go shoot somebody.' " See id. at 121. As the defendant and the same two people traveled in the vehicle, the defendant shot at another vehicle, severely injuring its occupants. See id. The next day, the defendant displayed a newspaper article about the shooting and bragged about his involvement. See id. One of the other passengers was also present as the defendant bragged; he said nothing to confirm or deny his involvement, but he burned the newspaper article. See id. at 121–22. This court concluded that there was insufficient evidence to support application of the Group Crime Enhancement because this "accomplice" had merely been present during the shooting and there was no evidence of his active participation in the crime. See id. at 124. Similarly, in In re V.T., 2000 UT App 189, 5 P.3d 1234, this court determined that there was insufficient evidence that the defendant

---

9. There is no evidence indicating where the unidentified male was standing in relation to the spray paint can lid, i.e., whether he was standing on the driver side of the car, farther from the lid, or on the passenger side of the car, closer to the lid. Thus, the relative proximity of the lid to the unidentified male is of questionable significance. We also note that another spray paint can lid was found in the car with the two females. The State apparently does not see this fact as implicating the two females in the crime in any significant way—nor do we.

10. The State also uses Cristobal's explanation for being at the crime scene, see supra ¶ 4 n. 2, to argue that Cristobal and the juvenile had intended to meet a friend at the Savers for the purpose of tagging the store, and that the friend had started tagging the area before Cristobal and the juvenile arrived. But similar to the State's other theories, there are no facts that make this possibility more probable than any of the other proposed possibilities, meaning that this conclusion also lies within the realm of speculation rather than reasonable inference.

was an active participant in a crime where he had been continuously present before, during, and after the theft of a camcorder, and there was no other evidence that he encouraged the commission of the crime. *See id.* ¶¶ 17–19. And in *In re M.B.*, 2008 UT App 433, 198 P.3d 1007, this court held that there was insufficient evidence to prove that the defendant was an active participant in a crime where he was wearing dark clothing and sitting in the passenger seat of an idling getaway car. *See id.* ¶ 12. We reasoned that "there [we]re both innocent and incriminating reasons to explain" these facts, and the inferences drawn therefrom were "too weak and speculative to support a conclusion beyond a reasonable doubt" that the defendant was involved in the crime. *Id.*

¶ 21 Ultimately, the impediment to applying the Group Crime Enhancement under the facts of this case is the absence of any evidence that supports a reasonable inference that the unidentified male aided or encouraged Cristobal: the unidentified male's presence at and subsequent flight from the scene did not aid or encourage Cristobal in committing criminal mischief; nor are there any facts creating a reasonable inference that the unidentified male's presence outside of the car and proximity to the spray paint can lid aided or encouraged commission of the crime. Inferring from these facts that the unidentified male was aware of the crime is reasonable, and the circumstances certainly suggest the possibility that he was there to help in some way. Nevertheless, there is no evidence in the record that makes this possibility more probable than the possibility that the unidentified male was merely present during the crime. Without facts in evidence that make one possibility more probable than the other, the conclusion that the unidentified male aided or encouraged Cristobal is based upon impermissible speculation rather than reasonable inference. There is, therefore, insufficient evidence from which the jury could conclude beyond a reasonable doubt that the unidentified male aided or encouraged Cristobal.

## CONCLUSION

¶ 22 We conclude that there was insufficient evidence to support application of the Group Crime Enhancement. Accordingly, we vacate the enhancement and remand the case to the trial court for appropriate modification of the judgment and sentence.

¶ 23 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and WILLIAM A. THORNE JR., Judge.