**2015 UT App 168**

# THE UTAH COURT OF APPEALS

CHRISTL SIMONS,
Appellant,
*v.*
PARK CITY RV RESORT, LLC AND DOUG N. SORENSEN,
Appellees.

Memorandum Decision
No. 20131181-CA
Filed July 9, 2015

Third District Court, Silver Summit Department
The Honorable Ryan M. Harris
The Honorable Robert K. Hilder[1]
No. 070500501

P. Matthew Muir, Attorney for Appellant

R. Stephen Marshall, Attorney for Appellees

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES JAMES Z. DAVIS and MICHELE M. CHRISTIANSEN
concurred.

ROTH, Judge:

¶1     Plaintiff Christl Simons appeals from the grant of
summary judgment in favor of Defendants Neil H. Sorensen
Construction Co. (NSC), Park City RV Resort, LLC (PCRV), and
Doug N. Sorensen (collectively, the Defendants) on her alter ego

---

1. Judge Ryan M. Harris granted summary judgment in favor of
Doug N. Sorensen on Christl Simons's unjust enrichment claim.
Judge Robert K. Hilder granted summary judgment in favor of
the Defendants on Simons's alter ego theory.

claim and to Sorensen individually on her unjust enrichment claim. We affirm.

¶2    Sorensen is the sole owner of NSC and serves as its president. Simons entered into a construction contract with NSC to build her home for $363,829, plus any additional costs incurred for any changes she requested to the original plans. The contract price included NSC's profit. In total, Simons paid NSC just over $404,000 for the project. After completion of construction, Simons noticed that several components of the home were unfinished, not built in accordance with the specifications, or defective. The most serious problems resulted in water and mold damage to Simons's home. Simons requested that NSC remedy these problems, but NSC refused. The cost of repairing those problems was $74,000.

¶3    Simons then filed this case against NSC and Sorensen, as well as against PCRV, a small limited liability company of which Sorensen is a member and the manager.[2] Simons's complaint asserted a number of claims, including breach of contract, breach of the covenant of good faith and fair dealing, alter ego, and unjust enrichment. In response to two separate summary judgment motions, the district court granted summary judgment to the Defendants, dismissing all but the contract claims against NSC. When NSC failed to defend on the contract claims, the district court granted Simons judgment against NSC in the amount of $269,285, including, among other things, $100,000 for overpayment on the contract and $74,000 for repairs to be made by third parties after NSC refused to remedy the problems in Simons's home.

¶4    Simons now appeals, asserting that the district court erred in granting summary judgment to the Defendants on the alter

---

2. PCRV operates a recreational vehicle park in Park City.

ego claim and to Sorensen on the unjust enrichment claim. Summary judgment is appropriate only when "no genuine issue as to any material fact [exists] and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "[E]ntitlement to summary judgment is a question of law." *Macris & Assocs., Inc. v. Neways, Inc.*, 2002 UT App 406, ¶ 11, 60 P.3d 1176 (citation and internal quotation marks omitted). Thus, "[w]e determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact." *Id.* (citation and internal quotation marks omitted). In assessing whether there were disputes of material fact, we "view[] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

## I. Alter Ego

¶5      "'Ordinarily a corporation [or limited liability company] is regarded as a legal entity, separate and apart from its stockholders.'" *Lodges at Bear Hollow Condo. Homeowners Ass'n v. Bear Hollow Restoration, LLC*, 2015 UT App 6, ¶ 13, 344 P.3d 145 (quoting *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 13, 284 P.3d 630).[3] "The purpose of such separation is to insulate the stockholders from the liabilities of the [corporate entity], thus limiting their liability to only the amount that the stockholders voluntarily put at risk." *Id.* (citation and internal quotation marks omitted). A party "may pierce the corporate veil and obtain a judgment against the individual shareholders . . . [for] a

---

3. The parties assume that the alter ego doctrine applies to limited liability companies as well as corporations, and we have recognized that "[t]his appears to be the law in Utah." *Lodges at Bear Hollow Condo. Homeowners Ass'n v. Bear Hollow Restoration, LLC*, 2015 UT App 6, ¶ 14 n.5, 344 P.3d 145.

cause of action [that] arose from a dispute with the corporate entity" if the plaintiff proves that the corporation is acting as an alter ego of its shareholders. *Id.* (citation and internal quotation marks omitted). Courts grant such relief, however, "only reluctantly and cautiously." *Id.* (citation and internal quotation marks omitted).

¶6      To make a case for piercing the corporate veil, the plaintiff must demonstrate both parts of what has become known as the *Norman* test. *Id.* ¶ 14. "The first part of the test, often called the 'formalities requirement,' requires the movant to show 'such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.'" *Id.* (quoting *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979)). In *Colman v. Colman*, 743 P.2d 782 (Utah Ct. App. 1987), we identified "[c]ertain factors which are deemed significant, although not conclusive, in determining whether [the formalities requirement] has been met." *Id.* at 786. These factors include

> (1) undercapitalization of a one-man corporation;
> (2) failure to observe corporate formalities;
> (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder;
> (5) nonfunctioning of other officers or directors;
> (6) absence of corporate records; [and] (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders . . . .

*Id*. (footnotes omitted). "The second part of the [*Norman*] test, often called the 'fairness requirement,' requires the movant to show that observance of the corporate form would sanction a fraud, promote injustice, or condone an inequitable result." *Lodges at Bear Hollow*, 2015 UT App 6, ¶ 14.

¶7      "'To survive a motion for summary judgment on an alter ego theory, the party alleging alter ego liability must present

evidence creating a genuine issue of disputed material fact with respect to both elements of the *Norman* alter ego test.'" *Id.* ¶ 12 (quoting *Jones & Trevor Mktg.*, 2012 UT 39, ¶ 25); *see also Orvis*, 2008 UT 2, ¶ 18 (explaining that when the party opposing summary judgment has the burden of proof at trial, that party "'must set forth specific facts showing that there is a genuine issue for trial'" (quoting Utah R. Civ. P. 56(e))). The district court granted summary judgment in favor of the Defendants on Simons's alter ego claim because it concluded that Simons had "failed to shoulder her burde[n]" of showing that "a genuine and material factual dispute exists."

¶8 Simons contends that she did make a showing sufficient to withstand summary judgment. In support of her position, Simons cites her version of the facts and argues why her evidence demonstrates a dispute of material fact regarding alter ego. She then invites us to determine that, under the summary judgment standard, these facts ought to be construed in favor of sending to trial her claim that NSC and PCRV were acting as Sorensen's alter egos. Simons's briefing fails to persuade us that the district court erred in granting summary judgment. First, her analysis of the alter ego claim consists of conclusory statements of fact (which appear to be largely undisputed) without any explanation of how those facts are material to the legal issues regarding the validity of the alter ego claim. Second, Simons has not persuaded us that the evidence that she describes legally precludes summary judgment on her alter ego claim.

¶9 The shortcomings in Simons's briefing are particularly apparent with respect to the formalities requirement of the *Norman* test. Simons contends that she "presented evidence of most, if not all, of the . . . seven *Colman* factors." She fails to demonstrate, however, that her evidence created a material dispute about any of these factors or, more broadly, about whether NSC, PCRV, and Sorensen shared a "'unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.'" *See Lodges at Bear Hollow*,

2015 UT App 6, ¶ 14 (quoting *Norman*, 596 P.2d at 1030). Indeed, Simons makes only a limited effort to demonstrate how her evidence can be construed as establishing any particular *Colman* factor. She simply cites this evidence and contends that it supports the *Colman* factors with little specific analysis of how it does so.[4] Three examples illustrate this problem.

¶10   First, in what appears to be an attempt to demonstrate primarily the first *Colman* factor, i.e., that NSC was an undercapitalized one-man corporation, Simons asserts that she presented evidence showing that Sorensen was the sole owner and president of NSC, that NSC allowed Sorensen's wife to keep its books but that Sorensen was ultimately responsible for all business and financial decisions, and that NSC failed to remedy the defects in Simons's home due to insolvency despite her having paid $404,000 to construct the home. This evidence, on its own, however, is insufficient to raise a material issue about whether NSC was undercapitalized. Indeed, "[t]o determine whether a corporation is adequately capitalized, one must compare the amount of capital to the amount of business to be conducted and obligations to be fulfilled." *Lodges at Bear Hollow*

<hr>

4. Simons's memorandum in opposition to summary judgment had similar shortcomings, which appear to have played a significant part in the district court's decision to grant summary judgment. Specifically, the court explained that Simons's opposition to summary judgment inappropriately contained "pages of argument" in the section where Simons was to identify which of the Defendants' statements of facts were actually in dispute. At the hearing, the court said to Simons, "You would identify, [what fact statement] you dispute, but, then, you would argue about it." In this regard, the court reasoned, Simons was "disagree[ing] with the force of the declaration," which is a "weight issue," but she did not demonstrate how her evidence created a material dispute of fact about her alter ego claim.

*Condo. Homeowners Ass'n v. Bear Hollow Restoration, LLC*, 2015 UT App 6, ¶ 17, 344 P.3d 145 (citation and internal quotation marks omitted). And "some courts have taken the view that where the party alleging alter ego has failed to establish what an adequate level of capitalization would be, its evidence on undercapitalization is insufficient to create an issue for the jury." *Id.* (citation and internal quotation marks omitted). Simons does not merely fail to show "what an adequate level of capitalization would be," *see id.* (citation and internal quotation marks omitted); she does not cite *any* evidence of NSC's capital, profits, or liabilities and instead relies solely on speculation that because NSC is solely owned by Sorensen, managed by Sorensen and his wife, and eventually ended up insolvent, it must have been undercapitalized in the first place.[5]

¶11 A second example involves Simons's claims regarding Sorensen's use of NSC funds. Simons alleges that the evidence showed that Sorensen "took a $50,000.00 loan from NSC" and that he "could not explain or account for how the 'loan' proceeds were used." According to Simons, this evidence demonstrates that Sorensen was siphoning corporate funds (the fourth *Colman* factor) and using the corporation as a facade for his own conduct (the seventh *Colman* factor), ultimately resulting in NSC's insolvency. However, standing alone, a mere showing that NSC was insolvent and that Sorensen took $50,000 from NSC is insufficient as a matter of law to pierce the corporate veil. *See Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 27, 284 P.3d 630. Indeed, "[t]here are many legitimate reasons why shareholders

5. The fact that a corporation cannot afford to correct problems it created and that the plaintiff "may have difficulty enforcing the judgment against [the corporate entity] alone is not the type of injustice that warrants piercing the corporate veil." *Lodges at Bear Hollow*, 2015 UT App 6, ¶ 21 (alteration in original) (citation and internal quotation marks omitted).

might draw funds from corporate accounts," even financially troubled ones, such as for payment of "salaries or bonuses, loans, or dividends." *See id.* To establish that Sorensen's $50,000 withdrawal supported Simons's alter ego claim, Simons had to produce additional evidence that demonstrated that "the withdrawals were not legitimate or that the company failed to properly account for the withdrawals." *See id.* She failed to do this. And although Simons asserts that she could not have made this showing because NSC failed to (and, in fact, cannot) "provide a complete accounting for the Simons project," she fails to address what efforts she made to elicit NSC's compliance. It is worth noting that the district court gave Simons time to conduct additional discovery, including obtaining the Defendants' accoutings, before granting summary judgment, but Simons apparently chose not to do so.

¶12    A final example is Simons's allegations regarding NSC's recordkeeping, which seem aimed at establishing failure to observe corporate formalities (the second *Colman* factor) and the absence of corporate records (the sixth *Colman* factor). Simons alleges that there was evidence that she had paid at least $404,000 for the home and NSC can only account for $276,005 in expenditures and profits for the construction in accordance with their "cost plus fixed profit" arrangement. As support, Simons cites what appear to be some NSC ledgers from the time of construction as well as her own accounting of the project's costs. Simons contends that this evidence created a material dispute about whether NSC kept adequate corporate records and observed corporate formalities. But she provides no information about the scope of the ledgers or who created them and for what purpose. Indeed, by her own admission, Simons provided only NSC's incomplete accounting of her project. Thus, Simons seems to be asserting that the court could infer from the simple absence of a complete set of records that NSC failed to maintain records or to observe corporate formalities. As discussed above, however, Simons has not demonstrated that she made efforts to obtain this information; she does not actually focus on the issue

of whether the incomplete records she describes are indeed the only records NSC kept. Thus, Simons has provided insufficient evidence from which such an inference can be made. *See State v. Cristobal*, 2010 UT App 228, ¶ 16, 238 P.3d 1096 (explaining that an inference can be made only when "the facts can reasonably be interpreted to support a conclusion that one possib[le explanation] is more probable than another"). Moreover, even if NSC did fail to keep accurate records of her house project, Simons has not made a meaningful attempt to analyze how the failure to maintain thorough accounting records on one project creates a material issue of fact about whether the entity failed to observe corporate formalities or keep corporate records per *Colman*.

¶13    In addition to these three examples, Simons cites some additional evidence purporting to show irregularities in NSC's accounting. She does not explain, however, how that evidence establishes any particular *Colman* factor or is otherwise legally significant to her alter ego claim.[6] Nor does she argue that any of her evidence supports the remaining two *Colman* factors.[7]

---

6. Simons asserts that much of the "evidence outlined in the unjust enrichment section [of her brief] . . . supports an alter ego theory" as well. She acknowledges, however, that because a second summary judgment motion on unjust enrichment was filed after the alter ego summary judgment decision, "[s]ome of [the unjust enrichment] evidence was not in the record at the time the district court granted summary judgment against the alter ego claim." Accordingly, Simons recognizes the need "to segregate the evidence that was in the record at the time of the summary judgment rulings."

      Although we appreciate Simons's candor and her efforts "to segregate the evidence," we cannot accept her invitation to rely on the unjust enrichment evidence presented after the

(continued…)

¶14 It is true that a party need not show all the *Colman* factors to establish an alter ego claim because even a single factor may have conclusive weight under the particular circumstances. *Lodges at Bear Hollow*, 2015 UT App 6, ¶ 14. Simons, however, has simply failed to analyze the facts in any way that adequately demonstrates genuine issues of material fact regarding any particular *Colman* factor or an aggregation of those factors. Without such a showing, Simons has not established that there was a basis for denying summary judgment on her alter ego claim.[8] Accordingly, we affirm the district court's grant of summary judgment to the Defendants on the alter ego claim.

---

(…continued)

district court granted summary judgment on the alter ego claim in assessing the propriety of that decision. *Cf. Rapela v. Green*, 2012 UT 57, ¶¶ 42–45, 289 P.3d 428 (declining to consider, for the first time on appeal, whether certain evidence supported the second prong of a best interest standard where the evidence had been offered in the district court only to support the first prong). We further note that the district court provided Simons with an extension of time after the initial hearing on the Defendants' summary judgment motion to obtain such information and to provide supplemental briefing before it dismissed the alter ego cause of action, but Simons apparently failed to conduct any additional discovery and filed no additional briefing. As a result, the district court dismissed the alter ego claim based on the parties' original submissions.

7. Simons may have made such an argument in the district court, but she has not done so on appeal.

8. Because we conclude that Simons failed to demonstrate any genuine dispute of material fact concerning the formalities requirement, we do not address the separate issue of whether

(continued…)

II. Unjust Enrichment

¶15    Unjust enrichment is an equitable remedy that can be brought to bear where one person confers a benefit on another under circumstances where it would be inequitable for the other to retain the benefit without paying for it. *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987). "It is not enough that a benefit was conferred on the defendant, rather, the enrichment to the defendant must be unjust in that the defendant received a true windfall or something for nothing." *Richards v. Brown*, 2009 UT App 315, ¶ 29, 222 P.3d 69 (citation and internal quotation marks omitted). Put another way, the plaintiff must show the defendant received a benefit and the value of that benefit, not simply that the plaintiff suffered a loss. *Id.*

¶16    Simons contends that through payments made during the home construction, she conferred upon Sorensen a benefit of approximately $100,000.[9] Simons reasons that Sorensen inequitably retained this benefit because she paid $404,000 to NSC to construct her home and because NSC failed to remedy the problems to her home, which ultimately cost an additional $74,000 to fix, despite the fact that NSC can only account for

_____

(…continued)
Simons carried her burden with regard to the fairness requirement. *See Lodges at Bear Hollow Condo. Homeowners Ass'n v. Bear Hollow Restoration, LLC*, 2015 UT App 6, ¶ 13, 344 P.3d 145 (requiring a showing of disputed material facts on both parts of the *Norman* test to survive summary judgment).

9. Simons contends that the benefit was the difference between the amount paid on the contract and the amount NSC could actually account for as expenditure or profit on the construction, which she asserts is a difference of at least $99,756. For ease of reference, we have rounded up to $100,000.

payments amounting to $276,005 for materials, subcontractors, and profit. While Simons's argument may support a conclusion that NSC received thousands of dollars more than it should have, she has not persuaded us that there are material facts in dispute about whether Sorensen was unjustly enriched so as to preclude judgment in his favor as a matter of law.

¶17 Specifically, Simons has failed to demonstrate that she conferred a benefit upon Sorensen under circumstances where it would be inequitable for him to retain that benefit. First, the undisputed evidence demonstrates that none of Simons's payments on the home construction project were made directly to Sorensen. Second, Simons fails to present evidence that Sorensen was in fact enriched by any benefit she indirectly conferred upon him. Rather, Simons's unjust enrichment claim appears to be more accurately viewed as a restatement of her alter ego claim.

¶18 First, Simons presented no evidence that she conferred a benefit upon Sorensen himself. In his motion for summary judgment, Sorensen identified undisputed evidence that shows that Simons entered into a contract with NSC to construct her home and that she made all payments to NSC, not to Sorensen. The undisputed evidence also demonstrates that Sorensen did not receive any payments under the contract, except to the extent that contract payments may have indirectly helped fund his salary as an employee of NSC or other disbursements. *See Lodges at Bear Hollow Condo. Homeowners Ass'n v. Bear Hollow Restoration, LLC*, 2015 UT App 6, ¶ 20, 344 P.3d 145 (explaining that, in cases where the party opposing summary judgment is the plaintiff, the party moving for summary judgment satisfies its initial burden by showing that there are no disputes of material fact). Although Simons purports to have disputed these claims in her opposition to summary judgment, she fails to identify any evidence that counters Sorensen's showing that she entered into a contract with NSC alone and that she made all payments to NSC, not Sorensen. Rather, Simons simply makes an argument about how

the payments ought to be construed given NSC's and PCRV's relationship with Sorensen and their failure in Simons's view to observe corporate formalities.

¶19   Second, Simons has directed us to no evidence that supports her claim that Sorensen was inequitably benefitted by the $100,000 overpayment to NSC. Rather, this claim seems to be based on her assertion that Sorensen "personally stripped [the funds] out of NSC," resulting in NSC being financially unable to pay the judgment she obtained against that corporation. But, as we discussed above, she did not provide any evidence in her opposition to the motion for summary judgment on the alter ego cause of action to establish such a claim as more than a mere assertion. And although Simons filed a separate opposition to summary judgment on the unjust enrichment claim, she does not brief the evidence presented in that opposition in any meaningful way on appeal.[10] Rather, she merely makes bare statements of fact that, although perhaps suggestive of benefit to Sorensen (e.g., NSC's payment of Sorensen's personal credit

10. In addition to not adequately briefing the unjust enrichment claim, Simons fails to provide useful record citations. In a footnote to the analysis section of her brief, Simons refers us to 350 pages of exhibits that she claims contain record evidence of Sorensen's stripping away of funds from NSC. Although Simons provides specific references to evidence she deems pertinent at an earlier point in her briefing, she refers specifically to NSC's pagination of that evidence, which does not align with the appellate record's pagination. In all, her approach places too much of the burden of developing her factual contentions on this court. *See Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 (explaining that the appellant must not treat the appellate court as "a depository in which [a party] may dump the burden of argument and research" (alteration in original) (citation and internal quotation marks omitted)).

cards, NSC's lending to Sorensen, and NSC's payments to PCRV), do not amount to evidence that Sorensen in fact benefitted under circumstances where it was inequitable for him to retain that benefit.

¶20 Without a showing that Sorensen was inequitably benefitted, Simons has failed to make out a claim for unjust enrichment that can survive summary judgment. *See id.* (explaining that once the moving party has made its initial showing of no material facts, "the burden then shifts to the nonmoving party, who may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial" (citation and internal quotation marks omitted)). Accordingly, we also affirm the district court's grant of summary judgment to Sorensen on the unjust enrichment cause of action.

¶21 In conclusion, Simons has not carried her burden of showing that there were genuine disputes of material fact to preclude summary judgment on either the alter ego or unjust enrichment cause of action. Therefore, we affirm the grant of summary judgment to the Defendants on the alter ego claim and to Sorensen on the unjust enrichment claim.

———————